IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-CV-3016-MSK-NYW

DAVID JOSHUA BARTCH,

 Plaintiff,

v.

MACKIE A. BARCH, and
TRELLIS HOLDINGS MARYLAND INC.,

 Defendants.

---

**OPINION AND ORDER DENYING MOTIONS TO DISMISS AND FOR STAY**

---

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss (**# 10**), the Plaintiff's response (**# 23**), and the Defendants' reply (**# 31**); and the Defendants' Motion to Stay (**# 25**), the Plaintiff's response (**# 39**), and the Defendants' reply (**# 40**). For the reasons that follow, both Motions are **DENIED**.

## I. JURISDICTION

The Court has subject-matter jurisdiction to hear this case under 28 U.S.C. § 1332(a). The parties dispute whether the Court can exercise personal jurisdiction over the Defendants.

## II. BACKGROUND[1]

Plaintiff Joshua Bartch is a member of Doctors Orders LLC, a licensed cannabis provider in Colorado since 2009. (**# 1 ¶ 13**.) To facilitate expansion to other states, the Plaintiff formed Doctors Orders Group LLC as a Delaware company based in Colorado. (**# 1 ¶ 14**.) He hired

---

[1] The Court recounts and accepts as true the well-pled facts alleged in the Complaint (**# 1**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

Defendant Mackie Barch[2] to expand into Maryland, where the Defendant lives. (**# 1 ¶ 16**.) The Defendant was paid to work full-time for Doctors Orders Group, frequently traveling to the Group's Colorado offices. (**# 1 ¶¶ 16–17**.) In June 2015, the Plaintiff formed Doctors Orders Maryland LLC, a Maryland limited liability company, to be the Group's Maryland cannabis provider. (**# 1 ¶ 19**.) The Plaintiff also formed DO Maryland OP LLC, a Maryland limited liability company, to hold his 70% interest in Doctors Orders Maryland. (**# 1 ¶¶ 22–24**.) It appears that the Plaintiff owned the entirety of DO Maryland OP. Nonparty TJ Health LLC held the remaining 30% interest in Doctors Orders Maryland. (**# 1 ¶ 24**.) By virtue of its ownership of Doctors Orders Maryland, DO Maryland OP was its sole Class A member. (**# 1 ¶ 24**.)

In November 2014, criminal charges against the Plaintiff for misdemeanor drug possession resulted in deferred judgment. (**# 1 ¶ 30**.) Upon the advice of counsel, the Plaintiff, Defendant, Ashley Peebles (a Colorado resident affiliated with Doctors Orders Group), and Jeff Black (a Maryland resident) agreed that the Plaintiff would withdraw from DO Maryland OP. (**# 1 ¶ 30**.) They further agreed that DO Maryland OP would hold its Class A interest in Doctors Orders Maryland for the Plaintiff's benefit.[3] (**# 1 ¶ 30**.) The Plaintiff then withdrew and named Peebles and Black as members — with Peebles holding a 25% interest and Black holding a 75% interest — and Black as manager. (**# 1 ¶¶ 30–31**.) The Plaintiff and Defendant continued to negotiate with investors for Doctors Orders Maryland. (**# 1 ¶¶ 29, 34–35**.)

---

[2] Due to the similarity between the parties' names, the Court will refer to Mr. Barch as the Defendant and identify Defendant Trellis Holdings Maryland Inc. as Trellis.

[3] The Complaint is silent as to what Peebles and Black paid for their interest in DO Maryland OP, under what terms they were obligated to "return" the interest, or how the Defendant would be obligated by this Agreement when he was not yet a member or manager of DO Maryland OP.

Doctors Orders Maryland ultimately received preapprovals of its licenses in 2016. (**# 1 ¶ 35**.) Around this time, the Plaintiff decided to share "his" interest in Doctors Orders Maryland with the Defendant — an interest that was being held for his benefit by Peebles and Black. (**# 1 ¶ 37**.) The Plaintiff and Defendant signed a memorandum memorializing this agreement, attached to the Complaint as Exhibit A, providing that upon final licensing of Doctors Orders Maryland, they would amend the DO Maryland OP operating agreement to remove Black as manager and allocate its Class A interest in Doctors Orders Maryland as follows: 26.875% to the Plaintiff, 26.875% to the Defendant, 4.75% to Black, and 1.5% to Peebles. (**# 1 ¶ 39**; **# 1-1**.)

The Plaintiff and Defendant later agreed to transfer the Class A interest out of DO Maryland OP and into a new entity, Defendant Trellis Holdings Maryland Inc., a Maryland corporation.[4] (**# 1 ¶ 41**.) As a result, the Class A interest being held for the Plaintiff was now under the exclusive control of the Defendant as owner of Trellis.[5] (*See* **# 1 ¶ 41**.) In other words, the Plaintiff's interest was executory in that it had never actually been consummated. Upon final licensing in 2018, the Defendant refused to transfer the Plaintiff's share of the Class A interest, apparently on the advice of Doctors Orders Maryland's counsel. (**# 1 ¶¶ 53–54**.) Josh brings this action to receive the Class A interest held for his benefit. (**# 1 ¶ 56**.)

The Complaint (**# 1**) alleges six claims: (1) declaratory judgment on the agreement reached by the Plaintiff, Defendant, Peebles, and Black to hold the Class A interest in Doctors Orders Maryland for the Plaintiff's benefit, (2) civil theft, (3) conversion, (4) constructive trust, (5) breach of contract with a remedy of specific performance, and (6) unjust enrichment. The

---

[4] The Complaint does not address the specifics of this agreement.

[5] The Class A interest was eventually diluted by various investments in Doctors Orders Maryland and new membership classes.

Defendants, as Maryland residents, move to dismiss the Complaint for lack of personal jurisdiction (**# 10**).

### III. LEGAL STANDARD

When the Court's jurisdiction over a defendant is challenged pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *OMI Holdings Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). A court may elect to resolve the jurisdictional question immediately, by conducting an evidentiary hearing on the issue, or may defer resolution of the jurisdictional question until trial, requiring the plaintiff to make only a *prima facie* showing of jurisdiction at the pretrial phase. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A court may receive affidavits and other evidentiary material to assist in resolving the issue, but it must resolve any disputed facts in the light most favorable to the plaintiff. *Id.* Here, the Court will determine whether the Plaintiff has made a prima facie showing, and will reserve the ultimate jurisdictional question until trial.

Normally, the jurisdictional inquiry comprises two components. The plaintiff must show (1) the laws of the forum state confer jurisdiction by authorizing service upon the defendant; and (2) the exercise of such jurisdiction comports with the principles of due process. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). However, in Colorado, that inquiry is short-circuited because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause." *Id.* Thus, the inquiry simply becomes one of whether due process principles would be satisfied by the exercise of personal jurisdiction.

The due process inquiry itself has two components. First, the Court must determine whether the Defendant has "such minimum contacts with the forum state that he should

4

reasonably anticipate being haled into court there." *Id.* Second, the Court considers whether the exercise of personal jurisdiction in the circumstances presented "offends traditional notions of fair play and substantial justice." *Id.*

The minimum-contacts analysis considers whether the defendant is susceptible to either general or specific jurisdiction in the forum state. *See Am. Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016). General jurisdiction arises in the location that the defendant is "at home" — generally, a corporation's state of incorporation and its principal place of business — and in certain "exceptional" cases, in other locations where the defendant's connections are similarly substantial. *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017). Specific jurisdiction is a more flexible concept, examining the nature and extent of the defendant's contacts with the forum and whether the legal claims in suit arise out of those contacts. *Bristol-Meyers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction arises when the defendant engages in "an activity or occurrence that takes place in the forum state," from which the claims at issue arise. *Id.* That activity must be purposefully directed by the defendant towards the state, rather than being random or fortuitous or the result of the actions of another, and the harmful effects of that conduct must typically be felt in the forum state. *Anzures v. Flagship Restaurant Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016).

The fair-play and substantial-justice analysis is a "fact-specific" inquiry on which the defendant bears the burden of proof. *ClearOne Commc'ns Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). The defendant must present a "compelling case," showing considerations that "would render jurisdiction unreasonable." *Id.* Such considerations include: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in resolving the dispute, (3) the

plaintiff's interest in receiving convenient and effective relief, (4) the judicial system's interest in maintaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

## IV. DISCUSSION

The Plaintiff asserts specific jurisdiction over the Defendant. It is clear that the Defendant had some specific contacts with the State of Colorado — he worked for Doctors Orders Group, based in Colorado, and traveled here regularly. More importantly, taking the Complaint's allegations as true, the Defendant was party to an agreement with the Plaintiff, Peebles, and Black to hold the Plaintiff's interest in Doctors Orders Maryland for his benefit in DO Maryland OP, later transferred to Trellis. (*See* **# 1 ¶¶ 30**, **41**.) Both the Complaint and Response are silent as to whether this agreement was reached in person in a particular location or reached electronically in multiple locations. Construing this ambiguity in the Plaintiff's favor, the Defendant executed a contract with a Colorado resident, formed in part in Colorado, that called for him to deliver property to the Plaintiff in Colorado, the nondelivery of which causes the Plaintiff injury in Colorado. These contacts form the basis of the legal claims presented in this case. In this manner, the Defendant's activity constitutes an intentional action aimed at Colorado with knowledge that the injury would be felt in Colorado. *See Niemi*, 770 F.3d at 1348. The Court has no difficulty finding these contacts to meet the standard for personal jurisdiction.

The Defendant argues that personal jurisdiction cannot arise from the operating agreements of Maryland companies, entered into in Maryland, that somehow injure the Plaintiff in Colorado. This argument overlooks the contract upon which the Plaintiff sues. The relevant contract is the agreement between the Plaintiff and Defendant that the Defendant would hold the

6

Plaintiff's interest in Doctors Orders Maryland in trust until the deferred judgment was taken care of. Accepting the existence and the content of the agreement as true, the Defendant's activity is not nearly as Maryland-specific as characterized.

The Defendant does not contest any part of the analysis for fair play and substantial justice, instead making an abbreviated argument that the Complaint should be dismissed under Rule 12(b)(3) for improper venue. 28 U.S.C. § 1391 provides that venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". 28 U.S.C. § 1391(b)(2). Under this provision, "venue is not limited to the district with the most substantial events or omissions." *Employers Mut. Cas. Co. v. Bartile Roofs Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010). The statute instead "contemplates that venue can be appropriate in more than one district and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id*. at 1166 (alterations omitted). The Court examines two aspects in this analysis: first, the nature of the plaintiff's claims and the acts or omissions underlying those claims, and second, whether substantial events material to those claims occurred in the forum district. *Id*.

Here, the Defendant is subject to personal jurisdiction and a substantial part of the events giving rise to the Plaintiff's claims occurred in Colorado. In a breach of contract action, the relevant factors for venue include "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred". *Etienne v. Wolverine Tube Inc.*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998). As discussed above, the relevant contract was the agreement to hold the Plaintiff's Class A interest for his benefit pending the deferred judgment. The Defendant's acts in executing the alleged contract occurred between Colorado and

7

Maryland.  The Defendant is in possession of the Plaintiff's property that would rightfully belong in Colorado.  The Plaintiff's loss of property has resulted in damage in Colorado.  When a breach of contract occurs by means of communication between two states, events occur just as much in either location.  *See id*.  Thus, even accepting that a substantial part of the events giving rise to these claims occurred in Maryland, it is also true that a substantial part of the events occurred in Colorado.  This conclusion is consistent with the purpose of the venue statute, which is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  *Leroy v. Great W. United Corp*., 443 U.S. 173, 183–84 (1979).

   The Court notes that it is the acts of the Defendant that, by and large, form the basis for personal jurisdiction, not the acts of Trellis.  Indeed, the Complaint does not distinguish a great deal between the Defendant and Trellis.  Instead, it appears to hold both responsible for all conduct on an alter-ego theory.  (**# 1 ¶ 12**.)  The Court finds that personal jurisdiction extends to Trellis not on an alter-ego theory as alleged, but because Trellis is the entity affected by the contract that is the subject of this action.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (**# 10**) is **DENIED**. The Court's determination is preliminary, subject to presentation of sufficient evidence to establish personal jurisdiction at trial. Consequently, the Defendants' Motion to Stay (**# 25**) is **DENIED AS MOOT**.

Dated this 22nd day of May, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge