1

```
 1    ------------------------------------------------------

 2    DISTRICT COURT
      DENVER COUNTY, COLORADO
 3    520 West Colfax
      Denver, Colorado  80204
 4
      ----------------------------

 5
      THE PEOPLE OF THE STATE
 6    OF COLORADO

 7    v.

 8    DAVID J. BARTCH,
      Defendant.
 9
      ----------------------------        *FOR COURT USE ONLY*
10                                         CASE NO. 14CR2353
      For the People:                     COURTROOM 300
11        JULIE HILL, ESQ.

12    For the Defendant:
          JOSEPH LAZZARA, ESQ.
13        PHILIP CHERNER, ESQ.

14    ------------------------------------------------------

15    DIGITAL RECORDING TRANSCRIPT      (JUNE 18, 2015)

16    ------------------------------------------------------

17         The matter came on for HEARING before the
      HONORABLE EDWARD BRONFIN, Judge of the District Court, and
18    the following proceedings were had.

19    ------------------------------------------------------

20

21              DEFENDANT WAS PERSONALLY PRESENT

22

23

24

25
```



DEPOSITION
EXHIBIT
3
Bartch 9/25/19

1                AFTERNOON SESSION, JUNE 18, 2015

2                (Whereupon the following proceedings were had:)

3            THE COURT:  14CR2353, People versus Bartch.

4            MS. HILL:  Julie Hill for the People.

5            MR. LAZZARA:  Joe Lazzara and Phil Cherner on

6      behalf of Mr. Bartch, who appears.

7            THE COURT:  Good afternoon, folks.  The matter was

8      set for a hearing on Mr. Bartch's request that his involved

9      -- financial involvement or business involvement with a

10     marijuana grow operation was permissible under the terms and

11     conditions of the deferred judgment.  I've reviewed the

12     authority submitted by counsel.

13           Are we ready to proceed with the hearing, Ms.

14     Hill?

15           MS. HILL:  Yes, Your Honor.

16           THE COURT:  Thank you.  Mr. Lazzara.

17           MR. LAZZARA:  We are ready, Your Honor.

18           THE COURT:  Mr. Cherner, thank you.  I think this

19     is the defense hearing, so let me give Mr. Lazzara or Mr.

20     Cherner an opportunity to address the issue.

21           Mr. Cherner.

22           MR. CHERNER:  Thank you, Your Honor.  If I could

23     approach I just have a short exhibit.

24           THE COURT:  Certainly.  Does Ms. Hill have this?

25           MR. CHERNER:  She does.

1              THE COURT:  Thank you.

2              MS. HILL:  It is, Your Honor.  I have no objection

3    to this exhibit.

4              THE COURT:  Thank you.  For the record, Exhibit A

5    includes the terms and conditions of probation.  The Rule 11

6    and the motion and stipulation for the deferred judgment and

7    sentence.

8              MR. CHERNER:  And I think the parties also --

9              THE COURT:  Exhibit A is admitted for purposes of

10   this hearing.

11             Mr. Cherner.

12             (Defendant's Exhibit A is received into evidence.)

13             MR. CHERNER:  Thank you.  Your Honor, I think the

14   parties would also stipulate my client holds lawful licenses

15   under state law to engage in the businesses we've referred

16   to.

17             MS. HILL:  That's true, Your Honor.

18             THE COURT:  The Court notes that stipulation as

19   well.

20             MR. CHERNER:  All right.  So if I could inquire, I

21   hope the Court received, and I apologize for sending this in

22   fairly late, the defendant's supplemental authority that

23   came in just a few days ago.

24             THE COURT:  I did.

25             MR. CHERNER:  Okay.  If I could start with that

1    argument then.  The issue -- the issue before the Court is

2    whether or not there is something within the stipulation of

3    the -- to the deferred judgment the one that was entered

4    into and memorialized in Exhibit A that would prevent our

5    client from engaging in the marijuana business as a

6    businessman.

7            In reviewing the stip, paragraph 7A says the

8    defendant shall not commit any criminal offense or violate

9    any laws.  I believe that therefore is the operative phrase

10   and the one I'm going to focus on.  If you look at that

11   carefully, it -- it refers to the phrase criminal offense or

12   violate any laws and there is a history to those words.

13           The first time this came up was in People versus

14   Slayton, 878 P.2d 106.  Mr. Slayton was on a deferred and

15   then got convicted in a municipal court and faced a

16   revocation.  He argued to his trial court that he was not in

17   violation of the deferred judgment because a municipal

18   violation was not an offense under the definition he

19   proposed the Court follow.  He used the definition out of

20   Title 16 and the Slayton court.  I think it's fair to say --

21   agreed that that was the right statute, at least that

22   certainly was subsequent case law says Slayton says.

23   However, they said you can't read that statute literally and

24   we don't believe it's limited just to state statute -- state

25   law violations, we believe it includes municipal law

1    violations.

2              So that is as far as we got in 1994, the

3    definition of a defense at that point was state law

4    violations per the statute and municipal violations.

5              The statute was then visited again in Watkins.

6    Watkins was a medical marijuana user and Watkins argued that

7    the definition didn't include federal crimes.  In Watkins

8    they said specifically we're going to look back at Slayton

9    and we see that Slayton expanded the definition to include

10   non-state statutory crimes, namely municipal ones.  The

11   logic of Slayton was still compelling when Watkins was

12   decided in 2012.  And if you look at head note 21 in

13   Watkins, they write squarely that they believe the

14   definition in 18-1.3-104(1) of an offense includes federal

15   crimes.

16             So at that point in 2012, the definition of an

17   offense was -- for our purposes the definition was the

18   violation of a state statutory prohibition or a federal

19   crime or a municipal crime, I think that's fair to say.

20   However, Watkins came out before the election in November of

21   2012 which gave us Amendment 64.  And Amendment 64 further

22   defines offense by carving out a fair number of things from

23   the definition.  The definition that matters to this Court,

24   we believe under Watkins and Slayton, and that carve out was

25   substantial, it exempted personal marijuana behavior, if I

1    could use that phrase, and a fairly good chunk of commercial

2    behavior in two different sections.

3            And as I explained in this pleading that I filed

4    just recently, the two subsections three and four of

5    Amendment 64, technically Article 18 section 16, are quote,

6    Not to be an offense under Colorado law, closed quote,

7    provided my client is 21 years of age or older and I think

8    there is no argument about that.

9            So the current definition and the one that

10   controls the deferred judgment paperwork before us appears

11   to be the defendant can't commit any state crimes, he cannot

12   commit any municipal violations, but the definition of

13   offense that Watkins brought to include federal does not

14   apply to the extent he is engaged in behavior that's allowed

15   under Amendment 64, that is because of that phrase in 64

16   that says was an offense is, or precisely what an offense is

17   not.

18           So my client, to sum up, is not in the midst of an

19   offense, as that term is used, that term of art, in the

20   Colorado statutes and in his deferred judgment paperwork.

21   Now, I know that Watkins and Slayton also mention a need to

22   conduct one's affairs in a law abiding manner, I think they

23   phrase as law abiding life, but there is nothing in the

24   deferred judgment stipulation that says law abiding life.

25   The only phrase that I think matters for us to today is this

1    phrase of offense, and that phrase has been well defined in

2    Slayton and Watkins and now finally in 864.

3              THE COURT:  Doesn't the very first paragraph of

4    standard conditions of probation initialed by Mr. Bartch

5    state under crime free lifestyle quote, I will abide by

6    local, state, or federal laws and will report any contact

7    with law enforcement to my probation officer.

8              MR. CHERNER:  Where is that, Your Honor?

9              THE COURT:  Second page of Exhibit A.  Terms and

10   conditions -- standard conditions of probation.

11             MR. CHERNER:  It does say that, yes.  I still

12   think --

13             THE COURT:  So it -- doesn't that -- doesn't that

14   say that as a condition of the deferred judgment Mr. Bartch

15   has agreed to abide by local, state, and federal laws?

16             MR. CHERNER:  It does, although we still have the

17   carve out.

18             THE COURT:  Well, then my question then becomes

19   with the decision on Monday by the Colorado Supreme Court in

20   Coates versus Dish Network, 2015 Colorado 44, I assume

21   you've had an opportunity to review that.

22             MR. CHERNER:  I have.

23             THE COURT:  Doesn't that pretty clearly direct

24   where I need to go on this?

25             MR. CHERNER:  Well, Coates first of all dealt with

1  a different statute which was --

2            THE COURT:  I know it was medical marijuana.

3            MR. CHERNER:  Well, it was also the lawful

4  behavior statute.  It was the statute that allows one to be

5  fired or not fired for conduct.

6            THE COURT:  Oh, I understand.

7            MR. CHERNER:  Right.  So they are dealing with

8  different definitions.

9            THE COURT:  But I'm referring to paragraph 19 and

10  paragraph 20 of the Supreme Court's decision where in

11  paragraph 19 the Supreme Court of Colorado unambiguously, as

12  far as I can see, stated that the Federal Controlled

13  Substances Act, marijuana is Schedule 1 substance, period.

14            MR. CHERNER:  I think Watkins said that, and that

15  part of Watkins is still good law and those aren't the only

16  courts that have said.  And I'm conceding that my client's

17  conduct, should we be in a federal courtroom, would be a

18  real problem, but we are not.  I don't think Coates either

19  adds or subtracts to the quantum of law that you need to

20  deal with today.

21            THE COURT:  Thank you.  Anything further, Mr.

22  Cherner?

23            MR. CHERNER:  Yes.  If I could just very briefly

24  walk through the other arguments we've laid out in the

25  pleading we filed, oh, I don't know, about a month back.  We

1   have a comprehensive regulatory scheme here and Amendment 64

2   has erected that.  The legislature recognized it, for

3   example, if you look at 18-18-406, when you get to the

4   penalty provisions in (1)(b) there is a long -- well, not a

5   long list, a list of two lengthy statutes, which it says

6   have to be accounted for and therefore not criminal

7   behavior.

8           One is Title 12, Article 42.5, and the next is

9   Title 27, Article 80.  Those comprehensive regulatory

10  schemes have to be considered here when deciding, Your

11  Honor, whether or not we are in violation of the law and

12  whether this is an offense as I want to focus on.  That

13  still has to be considered.  I've cited up to you also the

14  statute that says the ability to contract is not impaired by

15  -- because it is a marijuana contract and it is still

16  enforceable under state law.

17          So when you are deciding what is an offense, not

18  under federal law, which I concede, but what the definition

19  of offense means under state law, that is the state's

20  definition of what an offense is.  There is a building and

21  perhaps overpowering public policy shown by all of these

22  statutes.

23          THE COURT:  May I raise another question, Mr.

24  Cherner?

25          MR. CHERNER:  Yes.

10

```
1              THE COURT:  Under the document that you're
2    referring to, which is the stipulation paragraph 7A.
3              MR. CHERNER:  Yes, Your Honor.
4              THE COURT:  It says:  The defendant shall not
5    commit any criminal offense or violate any laws.
6              MR. CHERNER:  Yes, it does.
7              THE COURT:  Doesn't the or violate any laws
8    encompass federal?
9              MR. CHERNER:  Not since the Amendment of A64, I
10   don't think so.  I don't think we can define any state law
11   in a way --
12             THE COURT:  Well, but -- excuse me.  What I'm
13   saying here is paragraph 7A doesn't say violate any state
14   laws it says any laws.  What I'm struggling with is why or
15   how should I read that stipulation any laws?  I understand
16   your argument on offense, but any laws in conjunction with
17   the standard terms and conditions of probation, what I read
18   under paragraph one, which refers to local, state, or
19   federal laws, what rule of construction would suggest that
20   that should mean not violate any state law but that
21   something that is prohibited by federal law is okay?
22             MR. CHERNER:  Your Honor, it's commonly said that
23   when the legislature passes a statute they are aware of
24   previous interpretations, so amendments have to be read with
25   that.  I think it's fair to say, although not quite as
```

1   logical, when voters Amendment 64 it came to the table with

2   all of the previous statutory interpretations.  It uses the

3   word offense.  I think if you read all of that together,

4   criminal offense or violate any laws, that is all one

5   package.

6        And Amendment 64's language is pretty powerful.

7   It says:  These things shall not be offenses that a person

8   cannot suffer forfeiture or seisure of assets because of it.

9   There is a long list of things the individual can do, even

10  in the constitution that amendment is many pages all by

11  itself.  And then we have the statute and finally the

12  regulations that implement all of that.  That is a

13  comprehensive scheme and I would urge the court to rule that

14  this is all one phrase, criminal offense or violate any

15  laws, it is all one package.  To parcel it out is

16  essentially to focus on one statute or one phrase and

17  eliminate the consideration of all of the other state

18  statutes, regulations, and constitutional provisions.  I

19  think it all has to come as a package.

20        THE COURT:  Thank you.

21        MR. CHERNER:  Sure.

22        THE COURT:  Ms. Hill.

23        MS. HILL:  Your Honor, the Court essentially made

24  my argument for me.  That was the argument that I was

25  prepared to make to the Court was that there are two places

1    that very clearly indicate that the terms and conditions

2    both of the deferred judgment and of probation are that the

3    defendant must comply with all laws, whether state or

4    federal.  Amendment 64 obviously does only and can only

5    pertain to Colorado -- Colorado law, it doesn't have any

6    authority to impact federal law.

7           And as the Court very clearly stated in the

8    Slayton case, it is a violation of federal law to use

9    marijuana, it is a violation of federal law to sell

10   marijuana for all of the reasons that the Court set forth.

11   And so I would ask the Court to deny the motion to modify

12   the terms and conditions of probation for those reasons.

13          THE COURT:  Thank you.  The Court makes the

14   following findings and orders:  Mr. -- first, I want to note

15   that this is a legitimate and bonafied issue, in no way do I

16   think that there has been anything hair splitting or

17   questionable by Mr. Lazzara and Mr. Cherner.  We're at an

18   issue, to my knowledge, has not been decided yet in

19   Colorado.  Is an issue that the Supreme Court in part was

20   grappling with just this week, so I want to note for you

21   folks and for Mr. Bartch that I think it's a legitimate,

22   reasonable issue that you folks raise.

23          Mr. Bartch was originally charged with a Class 4

24   drug felony possession of cocaine in an information that was

25   filed on May 19, 2014.  On November 7, 2014, Mr. Bartch

13

1    entered into a plea agreement in which he pled -- pleaded

2    guilty to a Class 1 drug misdemeanor and the -- an added

3    Count 2, Count 1 was dismissed, and Mr. Bartch was given the

4    opportunity to plead guilty to a two year deferred judgment.

5    The paperwork for the stipulation for the deferred judgment,

6    which is included in Defendant's Exhibit A, makes a

7    condition of the deferred judgment under paragraph 7A that

8    Mr. Bartch quote, shall not commit any federal offense or

9    violate any laws, closed quote.

10         I respectfully disagree with Mr. Cherner on his

11   interpretation on that.  It seems to me that commit any

12   criminal offense or violate any laws is the use of the term

13   or and the disjunctive requires more extensive compliance by

14   Mr. Bartch than simply not committing a criminal offense.

15   For example, it would seem to be that if during the course

16   of the deferred judgment Mr. Bartch was engaged in some

17   business enterprise which allegedly violated the CCPA, that

18   an argument could be raised and a basis could be set forth

19   that there was a violation of the deferred judgment because

20   a violation of the CCPA is a violation of law, albeit one

21   that does not result in criminal penalties.  I read

22   paragraph 7A as broadening what Mr. Bartch is prohibited

23   from doing during the course of the deferred judgment.

24         As I noted in the standard terms and conditions of

25   probation, second page of Exhibit A and signed by Mr.

14

1    Bartch, it also provides that Mr. Bartch will abide by

2    local, state, or federal laws.  In my views those two

3    provisions render compliance with federal law, a term and

4    conditions of the deferred judgment.

5         In Coates versus Dish Network, 2015 Colorado 44,

6    decided on Monday of this week by the Colorado Supreme Court

7    the issue in that case, as Mr. Cherner appropriately pointed

8    out, was the lawful activities statute it was a different

9    issue then is presented to this Court.  However, in its

10   discussion in that case, the Court found that despite

11   Colorado law and Amendment 64 -- actually, excuse me, the

12   Court didn't address Amendment 64 it addressed the medical

13   marijuana amendment.  Dispute the medical marijuana

14   amendment and the lack of criminal prohibition and the use

15   of medical marijuana for an individual such as Mr. Coates in

16   that case, that the lawful activity statute also included

17   federal law; and therefore, did not provide a basis for the

18   plaintiff in that case to claim that his discharge from

19   employment was unlawful or violated the statute.

20        In that case in paragraph 19, the Colorado Supreme

21   Court noted that the Federal Controlled Substances Act

22   prohibits medical marijuana.  The Controlled Substances Act

23   lists medical marijuana as a Schedule 1 substance, meaning

24   federal law designates it as having no medical acceptance

25   use, a high risk of abuse, and lack of accepted safety for

1   use under medical supervision.

2        The Court also noted that there was no exception

3   under federal law for marijuana use conducted in accordance

4   with state law.  In paragraph 21 of that decision, the

5   Supreme Court declined to address whether or not the

6   Colorado Medical Marijuana Amendment rendered medical

7   marijuana use quote, lawful, by conferring a right to such

8   use.

9        So the issue of whether that amendment created a

10   right has not, as far as I know, been decided by any

11   appellate court in Colorado.

12        The Coates decision in this Court's view is

13   valuable and instructive in that it delineates that the

14   amendments under the Colorado constitution, both medical

15   marijuana amendment, and Amendment 64 do not supersede or

16   change federal law.  And I think that's a clear cut

17   interpretation and the tension between Amendment 64 and

18   federal law has yet to be worked out and fully resolved.  I

19   suspect this case is one of those cases that may end up

20   flushing those issues out.

21        In any event, I feel bound by the decision of the

22   Colorado Supreme Court and its findings that marijuana is

23   illegal under federal law to apply the same concept or the

24   same principle here.  In this case Mr. Bartch has been given

25   the privilege of a deferred judgment, that deferred judgment

1    is conditioned upon Mr. Bartch's agreement not to violate

2    any federal law ownership of or the business of growing or

3    selling marijuana is a violation of federal law, albeit may

4    be permitted under Colorado law.  I interpret the terms of

5    the deferred judgment paragraph 7A and the paragraph one of

6    the standard terms of the probation document to embrace and

7    include federal law, and therefore, the Court respectfully

8    denies the motion.

9            The Court will determine that Mr. Bartch's

10   participation in or ownership in a medical marijuana

11   business, although it may be legal under state law, is

12   nevertheless currently a violation of federal law and

13   on-going participation and/or ownership in that business

14   would represent a violation of the terms and conditions of

15   the deferred judgment.  That's the Court's ruling.

16           With that, I don't know how Mr. Bartch wishes to

17   proceed, and if Mr. Bartch wishes to divest himself of his

18   ownership interest, I'm perfectly happy to consider a

19   reasonable period of time for him to do so.  If Mr. Bartch

20   does not wish to do so and wishes to either appeal this

21   order or let probation try to go forward with the revocation

22   and appeal that, that's fine as well.  I'm not trying to

23   tell him he should or shouldn't divest himself, that's an

24   issue for Mr. Bartch and for counsel.

25           If that's Mr. Bartch's decision, however, I am not

1   going to order that he do it tomorrow or do something that

2   doesn't give him a reasonable amount of time given the

3   Court's ruling to make necessary arrangements.

4         Is that something that you are prepared to address

5   today, Mr. Cherner?

6         MR. CHERNER:  If I could have just a second.

7         THE COURT:  Or Mr. Lazzara.  If you need

8   additional time to discuss that with Mr. Bartch, that's

9   fine.

10         MR. CHERNER:  Your Honor, could we get say two to

11   three weeks to decide what our next course of action is?  We

12   want to do this in good faith, but this is unplowed ground

13   --

14         THE COURT:  Oh, I recognize.  That is why I'm

15   saying I don't think it is fair or reasonable, given the

16   Court's order and given the fact that this is new territory,

17   at least as far as I am aware of on the issue of probation

18   and ownership to set some arbitrary deadline for Mr. Bartch.

19   I think a reasonable deadline is fine.

20         Do you folks want to come back or do you want to

21   notify me how you are going to proceed?  I'm more than happy

22   to do that, and you are welcome to come back here I don't

23   want to waste your time or money.  Ms. Hill and I will be

24   here in any event.

25         MR. CHERNER:  I just assume -- we would rather

18

1    come back in front of you if that's fine.

2            THE COURT:  Sure.  If we set this for either the

3    afternoon of July 16th or the morning of July 17th, how

4    would that work?

5            MR. CHERNER:  Let me just check.

6            Your Honor, we could be here on the 16th, Mr.

7    Bartch is expecting a child -- well, his wife is expecting a

8    child --

9            THE COURT:  Well, I think he is too.

10           MR. CHERNER:  I never get that right, Judge.

11           THE COURT:  I know.  Today's PC mis-eludes me

12   often as well, Mr. Cherner.  We're old guys.

13           MR. CHERNER:  Yeah.  So we would propose to come

14   back on the 16th in the afternoon.  Since he is not on bond

15   or anything I assume we could come without him.

16           THE COURT:  If Mr. Bartch can come, that's fine.

17   I certainly have no objection, do you, Ms. Hill, if we waive

18   Mr. Bartch's appearance?

19           MS. HILL:  No, Your Honor.

20           THE COURT:  All right.  Let's do it Thursday

21   June 16th -- excuse me, Thursday, July 16th at 1:30.  I will

22   enter an order today staying the effective of this order so

23   that probation will have that in the computer and that

24   probation will understand that no revocation is to be filed,

25   no action is to be taken at this point regarding Mr.

1   Bartch's on going ownership of the medical marijuana

2   business until July 16th at that point.

3          What I would like is a decision if Mr. Bartch --

4   like I said, if Mr. Bartch wants to divest that's fine, let

5   me know at that point what's going to be a reasonable period

6   of time.  Two years is not reasonable.  That would be the

7   end of the DJ and I'm not going to accept that, but give me

8   what you folks consider to be a reasonable time.  If Mr.

9   Bartch declines to do so, which he is perfectly entitled to

10  do and wants to enter an appeal or proceed an appeal, I

11  think this represents a final judgment for appellate

12  purposes and he can certainly proceed.

13         MR. CHERNER:  You're right, Your Honor.  I was

14  going to ask that you suspend the order's finality, however,

15  that starts the clock --

16         THE COURT:  That's what I've done.  I just said I

17  entered the order but I've stayed until July 16th both for

18  filing appellate purposes and for probation.

19         MR. CHERNER:  So it's not a final judgment as of

20  today?

21         THE COURT:  That's correct.

22         MR. CHERNER:  All right.

23         THE COURT:  I'm saying on July 16th I think it

24  will be if that is how you folks wish to proceed.  Maybe I

25  didn't say that clearly.

1              What I was envisioning if Mr. Bartch wishes to

2     proceed on or decides that he does not wish to divest, then

3     we will have a final order, an appealable order, as of

4     July 16th.

5              MR. CHERNER:  I understand.

6              THE COURT:  Thanks.  Anything else we can address,

7     folks?

8              MS. HILL:  No, Your Honor.  Thank you.

9              THE COURT:  Thanks.  Have a good day.

10             Congratulations on the upcoming birth, Mr. Bartch.

11             THE DEFENDANT:  Thank you very much.

12             (End of proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      CERTIFICATION

2           I, Christine Reeder, working under the capacity of

3    High Plains Reporting & Transcription, hereby certify that

4    the foregoing is a correct transcript from the electronic

5    sound recording of the proceedings in the above entitled

6    matter.

7           Dated this 28th day of July, 2015.

8

9                      Christine Reeder
                       High Plains Reporting &
10                     Transcription, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25