## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03016-MSK-NYW

DAVID JOSHUA BARTCH,

Plaintiff,

v.

MACKIE A. BARCH, and
TRELLIS HOLDINGS MARYLAND, INC.,

Defendants.



---

## PLAINTIFF'S RESPONSES TO DEFENDANT MACKIE A. BARCH'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DAVID JOSHUA BARCH

---

Plaintiff David Joshua Bartch ("Josh") responds to Defendant Mackie A. Barch's ("Mackie") First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1.      Josh objects to all Definitions, Instructions, and Interrogatories to the extent they seek to impose obligations greater than those imposed by the Federal Rules of Civil Procedure.

2.      Josh objects to all Definitions, Instructions, and Interrogatories to the extent they call for the disclosure of information protected by any applicable privilege, immunity, or exception, including but not limited to the attorney-client privilege and the attorney work product doctrine.

3.      Josh objects to Instruction No. 4 on the grounds that, in purporting to require Josh to detail the efforts taken to secure the information sought, the Instruction potentially turns multiple

Interrogatories into impermissible compound Interrogatories.

## INTERROGATORIES

1.     Identify each and every person who you believe has knowledge of any facts relating to any allegation in the Complaint, stating as to each person his or her full name, current address, current employer, and the subject matter about which the person has knowledge.

**RESPONSE**:

Josh objects to this Interrogatory on the grounds and to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Nor does Josh have personal knowledge as to what others know. Subject to and without waiving the foregoing objection, in addition to those persons named in Josh's Rule 26(a)(1) disclosures, Josh identifies the following individuals in addition to Josh and Mackie who may have knowledge of facts relevant to this case:

- Charles Alovisetti, Vicente Sederberg. Information regarding the formation and ownership of DOMD and other Doctors Orders-affiliated entities, including knowledge and information regarding the capitalization of DOMD.

- Brett Antonides, Asmar Schor & McKenna, Information regarding the formation of Trellis Holdings Maryland, Inc.

- Nicola Batten (formerly Nicola Giudice), Vicente Sederberg LLC, 455 Sherman St., Suite 390 Denver, CO 80203. Information regarding the formation and ownership of DOMD and other Doctors Orders-affiliated entities, including knowledge and information regarding the agreement between Josh, Mackie, Jeff Black, and others to transfer temporarily Josh's

2

interests in Doctors Orders-affiliated entities, Including Doctors Orders Maryland LLC, to be held in trust for Josh's benefit.

- Jeff Black, 1310 Rhode Island Ave NW, Washington, DC 20005. Information and knowledge regarding the ownership of Doctors Orders Maryland LLC ("DOMD"), agreement between Josh, Defendant Mackie Barch ("Mackie"), Black, and others to transfer temporarily Josh's interests in Doctors Orders-affiliated entities, including Doctors Orders Maryland LLC, to be held in trust for Josh's benefit.

- Barbara Marx Brocato, Brocato & Associates, 18 Pinkney Street, Annapolis, MD 21401. Information involving Josh's involvement in and ownership of DOMD.

- Philip Cherner, Vicente Sederberg LLC, 455 Sherman St., Suite 390, Denver, CO 80203. Information regarding Josh's deferred judgment and probation conditions.

- Brian Flank, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., one South Street, 27th Floor, Baltimore, Maryland, 21202. Information regarding the formation and ownership of DOMD, DO Maryland OP LLC, and other Doctors Orders-affiliated entities.

- Scott Gelbard, Peak Ventures. 543 Granville Street, Vancouver, BC, Canada V6C 1X8. Information regarding ownership of Doctors Orders-affiliated entities, including DOMD and DO Maryland OP LLC and proposed acquisition of interests by Aphria.

- Hank Gracin, Gracin & Marlow, LLP, The Chrysler Building, 405 Lexington Ave, 26th Floor, New York, NY 10174. Information regarding ownership of Doctors Orders-affiliated entities, including DOMD and DO Maryland OP LLC,.

- Joseph Lazzara, Joseph A. Lazzara, P.C., 5950 S. Willow Dr. #250, Greenwood Village, CO 80111. Information regarding Josh's deferred judgment and probation conditions.

3

- Leslie Marlow, Gracin & Marlow, LLP, The Chrysler Building, 405 Lexington Ave, 26th Floor, New York, NY 10174. Information regarding ownership of Doctors Orders-affiliated entities, including DOMD and DO Maryland OP LLC.

- Dan Morhaim, Stevenson, MD. Information regarding formation and ownership of Doctors Orders-affiliated entities, including DOMD and DO Maryland OP LLC.

- Christian Sederberg, Vicente Sederberg LLC. 455 Sherman St., Suite 390 Denver, CO 80203. Information regarding formation and ownership of Doctors Orders-affiliated entities, including DOMD and DO Maryland OP LLC.

- Darryl Taylor, Asmar Schor & McKenna PLLC, 5335 Wisconsin Ave, NW, Suite 400, Washington, DC 20015. Information regarding the creation and incorporation of Defendant Trellis.

2.    Set forth the factual basis for each cause of action in your complaint, identify all documents concerning the factual basis for each cause of action, and identify all persons with  personal knowledge of the factual basis for each cause of action.

**RESPONSE**: Josh objects to this narrative interrogatory on the grounds that it exceeds the permissible limits of discovery under Fed. R. Civ. P. 26(b)(1), which requires that discovery be "proportional to the needs of the case," considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. This type of tell-me-everything-you-know-about-the-case interrogatory is so all-inclusive as to be incapable of an accurate response and so clearly burdensome that courts have found them to be too broad to permit effective

4

responses.  More particularly, this interrogatory is overbroad.  *See Felix v. City & County of Denver*, No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D. Colo. 2009).  As expressed by the United States District Court for the District of Colorado:

> Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case…
>
> Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action.  To require answers to them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.
>
> The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery.

*Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997)).  Interrogatories should not require the answering party to provide a narrative account of its case.  *Id.* (quoting *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404 (D. Kan. 1998)); *Fischer and Porter Co. v. Tolson*, 143 F.R.D. 93 (E.D. Pa. 1992); *Stovall v. Golf & So. Amer. Steam Ship Co.*, 30 F.D.R. 152, 154, (S.D. Texas 1961); *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D. 2729 (S.D. Ohio 1954); and *State Farm Mut. Auto Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. App. 1991); *B.Braun Medical Inc. v. Abbott Lab.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).  This interrogatory also is premature, as it seeks a complete factual basis for each of Plaintiff's claims at the onset of discovery.  *Id; see also* C.R.C.P. 26(e).  In addition, this interrogatory also seeks work product and information protected by the attorney-client privilege.

5

3.     Identify each witness you have retained or specially employed to provide expert testimony in this case, including each witness employed by you whose duties regularly involve giving expert testimony, provide a complete statement of the opinions to be expressed and the basis and reasons therefore, and a list of cases in which the expert testified in court or deposition within the last five years.

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it seeks premature and early expert disclosures and that it seeks the disclosure of information subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Expert disclosures will be made in due course as provided for by the Scheduling Order. Subject to and without waiving the foregoing objections, none.

4.     Identify all communications you had with any person, including any defendant in this action, concerning the subject matter of this action.

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous, and not proportionate to the needs of the case. Specifically, identifying "all communications" that in any way "concern" the subject matter of this action is impossibly generic and vague as to be incapable of an effective response. This type of tell-me-everything-you-know-about-the-case interrogatory is so all-inclusive as to be incapable of an accurate response and so clearly burdensome that courts have found them to be too broad to permit effective responses. More particularly, this interrogatory is overbroad. *See Felix v. City & County of Denver*, No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D. Colo. 2009). As expressed by the United States District Court for the District of Colorado:

> Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a

> reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case…
>
> Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers to them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.
>
> The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case. The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery.

*Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997)). Josh further objects to this Request on the grounds and to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, Josh refers Defendants to the documents previously produced in this litigation as including a substantial volume of communications "concerning the subject matter of this action." Josh does not represent that the documents produced to-date constitute a comprehensive list of such communications, however.

5.       If you contend that the defendants in this matter, or any of their agents, employees or representatives at any time made an admission with respect to any issue involved in this litigation, identify the person making such alleged admission, the date and place and in whose presence the alleged admission was made, and state the contents of the alleged admission. If the alleged admission is contained in a document(s), please identify the document(s).

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome. Specifically, consistent with the Federal Rules of Evidence, Josh interprets the

undefined term "admission" to refer to any statement made by any Defendant that is potentially relevant to this lawsuit. This type of tell-me-everything-you-know-about-the-case interrogatory is so all-inclusive as to be incapable of an accurate response and so clearly burdensome that courts have found them to be too broad to permit effective responses.   More particularly, this interrogatory is overbroad. *See Felix v. City & County of Denver*, No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D. Colo. 2009).  As expressed by the United States District Court for the District of Colorado:

> Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case...
>
> Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers to them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.
>
> The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know...This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery.

*Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997)).

Subject to and without waiving the foregoing objections, Josh has produced and will continue to produce substantial numbers of documents that include emails from Mackie, each of which is an admission by Mackie.

6.    If you intend to rely upon any conversations, communications and/or correspondence you or your agents have had with either defendant in this matter or any of their

8

agents, employees or representatives to support a position that you have taken or intend to take in this action, describe in detail the date and substance of all such conversations, communications and/or correspondence.

**RESPONSE**: See objections and responses to Interrogatory No. 5, which are incorporated as if fully set forth herein.

7. Itemize, show and set forth the factual basis for how you calculate any damages claimed by you in this action, whether economic, non-economic, punitive, treble, statutory or otherwise, including, but not limited to, stating the factual basis for the damages claimed in paragraph 5 of the Complaint and the "estimates" and alleged "losses" referenced in paragraph 53 of the Complaint as part of your response.

**RESPONSE**: Josh objects to this Interrogatory on the grounds and to the extent that it seeks disclosure of information that is protected by the attorney client privilege, the work product doctrine, or any other applicable privilege or immunity. Josh further objects to this Interrogatory on the grounds and to the extent that it seeks information in the exclusive possession of Defendants. Josh further objects to this Interrogatory on the ground and to the extent it calls for information that is the proper subject of expert testimony.

Subject to and without waiving the foregoing objections, Josh is entitled to specific performance in the form of return of 50% of Trellis Holdings Maryland, Inc.'s ("Trellis") interest in DOMD as of Trellis's creation (that is, prior to Mackie's conveyance to others of some of Trellis's Class A units of DOMD, which conveyance would have to have come from Mackie's share of Trellis). To the extent that damages are deemed appropriate in this case as a substitute for specific performance, Josh is entitled to actual damages in the form of the value of the

ownership interest wrongfully withheld. Josh is further entitled to treble damages and an award of attorneys' fees pursuant to C.R.S. § 18-4-405. Further to C.R.S. § 13-21-102(1.5), Josh reserves the right to amend the Complaint to add a claim for exemplary damages. Josh is also entitled to prejudgment interest in the amount of 8% compounding annually. C.R.S. § 5-12-102. The precise calculation of Josh's actual damages under any claim for relief depends in large part on documents in the custody and control of Defendants, including, for example, financial documents sufficient to permit the parties to calculate the value of Trellis's holdings in DOMD. In addition, the precise calculation of Josh's damages may require expert testimony.

8.    State the time, place, and substance of any conversation that supports your claim that Mackie agreed to hold legal title of Trellis's Class A Member interest for a time for your benefit, with an obligation to transfer the interest back to you upon his demand and, if you claim there is a document memorializing this agreement, please identify the document or documents.

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case. Josh further objects to this Interrogatory on the ground that it prematurely seeks a comprehensive list of conversations supporting Josh's claim at or near the onset of discovery.

Subject to and without waiving the foregoing objections, Josh states that the agreement between himself and Mackie in which Mackie agreed to hold legal title of Trellis' Class A Member Interest in DOMD, LLC for Josh's benefit was part of a broader agreement by which Josh agreed to transfer his interest in DOMD temporarily to be held in trust for his benefit. Following a June 2015 court hearing regarding probation conditions of his deferred judgment for a misdemeanor drug charge, Josh was advised by counsel to transfer his interests in certain

businesses to others temporarily for them to hold while his deferred judgment was in effect. On September 30, 2015, for example, Brian Vicente emailed Mackie, Glenn Weinberg, Josh, Steve Fox, and Rachelle Yeung about the results of background checks and wrote that, based on the background check information, "we need to make decisions about ownership structure and who is and isn't going to appear on the application" for Maryland licenses. Based on his understanding that neither Josh nor Mackie would appear on the applications, Vicente wrote that he did not run background checks on either of them. On October 1, 2015, Josh, Mackie, and attorneys at Vicente Sederberg participated in a call to discuss the ownership structure of DOMD. During this call and subsequent discussions, it was agreed that Jeff Black and Ashley Peebles initially would hold 100% of Josh's interest in DOMD (which Josh held through DO Maryland OP, LLC ("DOMDOP")) for Josh's benefit. In exchange for their agreement to hold Josh's interests for a time for Josh's benefit, Black was to receive approximately 4.5% of DOMD (out of Josh's Class A Interest) and Peebles would be awarded approximately 1.5%. To reward Mackie for his role in DOMD's formation, Josh later agreed to transfer 50% of his ownership interest in DOMD to Mackie. Josh does not recall the precise time of the conversations in which he made such agreement but it occurred either in late 2015 or early 2016 during meetings at Doctors Orders Group in Colorado, as part of Josh and Mackie's joint work to create a national holding company to be called Trellis Group. In or around January 2017, Black raised concerns about the tax implications of his continuing to hold Josh's interest in DOMD. Josh and Mackie agreed with Black to take action to put into effect the agreement that had been reached to that point: reducing Black's Class A Interest in DOMD to 4.75% and Peebles' Class A Interest in DOMD to 1.5%, with Mackie and Josh splitting the remaining Class A units. That agreement is documented in a

January 23, 2017 memo signed by Mackie and Josh which states that each will own no less than 26.875% of the Class A Interest in DOMD, though the precise mechanism for holding the interests would be determined later. In implementation of the January 23, 2017 memorandum, by April 2017, DOMDOP transferred its DOMD units directly to Black and Peebles and the Josh/Mackie units to Trellis with the understanding that 50% of Trellis's interest in DOMD was to be held in trust for Josh.

Additional conversations between Josh and Mackie and in which Mackie was involved reflect the substance of the above-described conversations, including particularly the fact that first Black and Peebles, and then Mackie, held Josh's indirect interest for his benefit (Black and Peebles through DOMDOP and Mackie through Trellis). These include the following:

- On March 16, 2016, Brian Flank emailed Glenn Weinberg, Tyler Weinberg, Josh, and Mackie with the subject line "Maryland Entities – Notice of Business Owner to File Business Personal Property Return." Flank wrote: "Below are the Maryland entities that I am aware of … Bartch/Black/Peebles: DO Maryland OP LLC, DO Maryland RE LLC." Mackie responded: "Team, Aronson is aware and I'm in their office tomorrow to discuss it."

- On June 2, 2016, Flank sent a draft Confidential Information Memorandum for Trellis Group, the successor to the Doctors Orders group of companies, to various recipients. The Confidential Information Memorandum stated that, "Over the next three years, the Company will establish operations in Oregon, Massachusetts, *Maryland*, Texas, Florida, Pennsylvania and Ohio" (emphasis added); that "Trellis also has pending license approvals in Maryland"; that Trellis "believes that it has best-in-class management and

advisors....Led by Josh Bartch"; and identifies Josh as the company's "CEO/Principal." Mackie was involved in the creation of the Confidential Information Memorandum.

- On August 19, 2016, Mackie emailed Jeffrey Gershen, Tyler Weinberg, Josh, Kelly Jennings, and Todd Jones, writing the following: "Team, We need to be very careful with taxes for DO Maryland. Josh is no where [sic] on the application and shouldn't be reflected in the Companies [sic] taxes as it will raise questions. I'm not sure how to handle."

- On September 7, 2016, Mackie forwarded to Josh an email from Nicola Giudice re: "FB Post." Ms. Giudice wrote: "Mackie, can you ask Josh to delete this [Facebook] post? We don't want to make it seem like he's a part of the Maryland entity just yet." When he forwarded the message to Josh, Mackie wrote simply: "Please delete the below post."

- On February 14, 2017, Mackie emailed Josh, Tyler Weinberg, Glenn Weinberg, Wilkins, Darrel Barros, and Black with the subject line "Term Sheet for Maryland." Mackie wrote: "Team, Josh passed along a term sheet for the acquisition of the [sic] his interest in all *his* assets (OR, CO and MD). What's not clear is how this applies to Maryland?" (emphasis added). The attached term sheet related to an option to acquire 100% of "TRELLIS," defined as Trellis Holdings, and left the assets and appropriate ownership percentage to be filled in.

- On February 17, 2017 at 1:35 p.m., Mackie sent Josh an email with the subject line "Updated Assets" that listed assets in Colorado, Oregon and Maryland. Under Maryland assets, Mackie wrote: "Retail, Cultivation, Processing, Real Estate- 10 Washington St., Cambridge, MD – 54.5%."

13

- On February 17, 2017 at 2:23 p.m., Mackie sent Josh an email with the subject "Trellis Holdings Asset List." Mackie listed assets in Colorado, Oregon, Maryland, and Massachusetts. Regarding Trellis Holdings' Maryland assets, Mackie wrote: "Retail, Cultivation, Processing, Real Estate- 10 Washington St, Cambridge, MD – 54.5% (medical) 18K sqft grow, 6K sqft Lab."

- On April 22, 2017, Mackie emailed Josh with the subject line "FW: Trellis Holdings Formation (PDF Attached)." Mackie informed Josh: "Just an FYI, moving *our shares* into this entity." (Emphasis added.) Attached to the email was a draft Articles of Incorporation of Defendant Trellis Holdings Maryland, Inc.

- On June 22, 2017, Mackie emailed Scott Gelbard with the latest offer from the potential acquirers on the so-called "Liberty Deal." Mackie reported that the offer was $10,636,354.30 in cash and stock for "our piece." Mackie's reference to "our piece" was the 54.5% Class A interest in DOMD held by Trellis for Josh and Mackie.

In addition to the foregoing, Josh and Mackie had oral discussions about the subjects referenced above.

9.     State the reason(s) why you purportedly reached an agreement with Mackie to hold legal title of Trellis's Class A Member interest for a time for your benefit, with an obligation to transfer the interest back to you upon your demand.

**RESPONSE:**  As detailed more fully in response to Interrogatory No. 8, the agreement dates back to 2015 when Josh, Mackie, Black, and Peebles agreed that Black and Peebles would hold Josh's interest temporarily until sometime after the termination of Josh's deferred judgment. Josh and Mackie then agreed that they would share Josh's interest in DOMD on a 50/50 basis. In or

around January 2017, Black notified the group that he wanted to terminate the arrangement because of tax concerns, which resulted in an agreement memorialized in the January 23, 2017 memorandum (Exhibit A to the Complaint).  The agreement memorialized in the January 23, 2017 memorandum was implemented in part by Josh and Mackie's share of the Class A units of DOMD being transferred to Trellis. Vicente Sederberg advised that Josh's interest in DOMD should continue to be held for Josh's benefit for the time being.

10.     State the time, place, and substance of your discussions with anyone who advised you that you could not be on the application filed with the Maryland Medical Cannabis Commission because of your criminal history.

**RESPONSE**: To the best of Josh's recollection, no one ever gave him that advice.

11.     List all payments you made to Mackie to work on your behalf or for any company in which you claim an interest.

**RESPONSE**: Josh paid Mackie for his work in the form of 50% of Josh's equity interest in the Doctors Orders entities in Maryland and Oregon and agreed to give Mackie similar interests in Doctors Orders entities in Massachusetts and Hawaii, which never came to fruition. With respect to additional payments, pursuant to Fed. R. Civ. P. 33(d), Josh will produce documents reflecting such payments. To date, Josh has identified the following payments he made to Mackie, as described in a December 28, 2015 email from Mackie to Shannon Albert, Kelly Jennings, Steve Addison, and Josh with the subject line: "Mackie Barch/Roberts Consulting 2015 Pay." This email included the following table of payments from Josh to Mackie:

| | |
|---|---|
| 1/16/15 | $4,000 |
| 4/3/15 | 6000 |
| 5/1/15 | 3000 |

| | |
|---|---|
| 5/22/15 | 5000 |
| 6/9/15 | 3000 |
| 7/16/15 | 3000 |
| 7/21/15 | 9000 |
| 8/10/15 | 1000 |
| 9/15/15 | 10000 |
| 9/22/15 | 4446.27 |
| 10/13/15 | 5500 |
| 11/3/15 | 12000 |
| | $65,946 |

This email will be produced in Josh's forthcoming document production.

In addition, the total amount of payments from Josh to Mackie should be reflected in

Mackie's tax returns.

12.   Identify any person who will support your claim that you are entitled to an interest

in Trellis Holdings Maryland, Inc., and state the substance of that person's potential testimony.

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it is impossible to answer.

Josh has no knowledge of what specific testimony any witness may give in response to any given

question and any conceivable answer would be no more than speculation.

13.   Do you agree that your drug possession charge in Colorado was the reason you

relinquished your ownership in DOMD and, if not, please state why you did relinquish your

ownership.

**RESPONSE**:  The Complaint does not allege that Josh "relinquished" his ownership in DOMD.

Josh interprets Defendants' reference to "your drug possession charge in Colorado" to refer to a

two-year deferred judgment Josh entered into in November 2014. At a hearing on June 18, 2015,

the Court informed Josh that possessing an ownership interest in cannabis companies in violation

16

of federal law may constitute a potential probation violation. As a result, Josh made arrangements to transfer certain ownership interests temporarily, pursuant to agreements that such interests would be returned to him sometime after the expiration of the deferred judgment.

14.    List all capital contributions and loans you made to DOMD or any other entity listed in the Complaint, including the date, amount, and source of funds.

**RESPONSE**: Based on Josh's review of documents to this point, pursuant to Fed. R. Civ. P. 33(d), Josh refers Defendants to the following documents:

- Email from Steve Addison to Josh Bartch dated February 4, 2016 re "MD Payed [sic] and Owed."

- Email from Brian Flank to Josh, Mackie, Glenn Weinberg, Tyler Weinberg, Brian Vicente, Herb Wilkins, Charlie Alovisetti, and Stephen Owen dated April 4, 2016 re "DO Md 2015 accounting [Doctors Orders Maryland]".

These emails will be produced in connection with Josh's forthcoming document production. Additionally, Mr. Flank's April 4, 2016 email should be in Mackie's possession.

15.    State the basis for your claim that the current valuation of DOMD is at least between $50 and $60 million.

**RESPONSE**: Josh objects to this Interrogatory on the grounds and to the extent that it is vague and ambiguous and misrepresents Josh's position. Josh has no position regarding the current valuation of DOMD. Josh presumes that Defendants' reference to "your claim that the current valuation of DOMD is at least between $50 and $60 million" is a reference to paragraph 53 of the Complaint, filed on November 23, 2018, in which Josh estimated the then-current valuation of DOMD to be "at least between $50 and $60 million." The basis for that estimate is fully set forth

17

in the Complaint. Specifically, in June 2017 Mackie, Glenn Weinberg, Herb Wilkins, and Black rejected a $25 million purchase offer by Liberty Health Sciences USA for a partial interest in DOMD as inadequate to reflect DOMD's value, which they believed was at least $40 million. Subsequently, Mackie and the Weinbergs successfully sold Class E Member interests in DOMD to a group of investors at a pre-money valuation of $50 million. DOMD used the $10 million of capital from the Class E offering to complete construction of its warehousing, cultivation, and dispensaries. With its final licensing approval, DOMD became fully operational in 2018, thus suggesting an increase in value from the previous $50 million valuation that was used in selling the Class E Member interests.

16.     Set forth the factual basis for your contention that Mackie has repeatedly reaffirmed the agreement on which your claims rely and assured you that upon your request Mackie would cause Trellis to transfer the DOMD Class A member interest Trellis holds for your benefit.

**RESPONSE**: Josh objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in seeking every instance in which Mackie has reaffirmed the agreement that forms the basis for Josh's complaint. Josh interprets this Interrogatory as seeking the basis for the allegation in Paragraph 3 of the Complaint.

Subject to and without waiving the foregoing objections, see Response to Interrogatory 8.

17.     Identify all crimes (misdemeanor or felony) for which you have been convicted since the age of 18, and identify the date of such conviction, the name of the court that issued the judgment, and the case number.

**RESPONSE**: Josh objects to this Interrogatory on the grounds and to the extent that it is intended to annoy and embarrass and is not reasonably calculated to lead to the discovery of admissible

information. Subject to and without waiving the foregoing objections, in 2005 and 2009, Josh

pled guilty to misdemeanor counts of driving while ability impaired in County Court in Arapahoe

County, Colorado.  Josh does not have any information in his possession, custody, or control that

reflect the date of either the 2005 or 2009 judgment or the case number. Based on documents

produced by Defendants, it appears that the 2005 misdemeanor judgment was filed on September

26, 2005 as case No. 2005T209428 in Arapahoe County and the 2009 judgment was filed on

March 2, 2009 as Case No. 2009T101154 in Arapahoe County. *See* Trellis-000181.

18.     State the person who drafted, or help draft, Exhibit A to the Complaint, and identify

all correspondence leading up to the creation of the document.

**RESPONSE**: Josh objects to this Request on the grounds and to the extent that it seeks

information in the exclusive control of Plaintiff. Subject to and without waiving the foregoing

objection, on January 23, 2017 at 2:31 p.m., Jeff Black sent Mackie and Josh a draft agreement

in an email with the subject line "Fwd: Doctors Orders." From this email, the first draft of the

agreement appears to have been written by Ann Marie Mehlert at the request of Jeff Black. In her

email to Black, which Black forwarded to Mackie and Josh, Ms. Mehlert wrote:

Jeff – see attached

I have not seen the Doctors Orders LLC, so I am not sure if once you are removed
as manager there are ways to remove DO Maryland OP as the majority member
(the entity in which you own 75%).

Have you signed anything with Josh and Mackie indicating that you would give
them some of your 75% in DO Maryland OP?

Since Josh and Mackie don't own anything in either entity where is there
interests?  Have they been putting up money as loans.

I know you wanted a simple agreement, but I have very little knowledge of your
deal or the operating agreements, there may be issues that bear on the above that

are not addressed and the attached agreement may be more like a term sheet rather than an agreement that you can be assured will get you the 4.75%.

Call me after you have had a chance to review.

In Ms. Mehlert's first draft, Paragraph 1 of the document that eventually became Exhibit A to the Complaint read as follows:

1. The undersigned agree that upon removal of Jeff Black as the manager of Doctor's Orders, pursuant to the Second Amendment,  Black shall have no less than a 4.75% Class A interest in Doctor's Orders  Maryland LLC, which such interest may be through DO Maryland OP, LLC, the current majority member of Doctors Orders.

Ms. Mehlert's initial draft had signature lines for Josh, Mackie, and Peebles.

A number of emails followed Ms. Mehlert's first draft, all of which occurred on January 23, 2017. Specifically:

- At 2:35 p.m.,[1] Mackie responded: "I'll call you on this, can't sign anything on behalf of Doctor's Orders Maryland LLC."

- At 3:46 p.m., Mackie wrote an email to Black, Josh, and Peebles with the subject line "Promissory Note" attaching a revised draft of the agreement. In the body of the email, Mackie wrote: "Guys, Please sign tonight and get back to me." Mackie's attached draft added a signature line for Black in addition to the signature lines for Josh, Mackie, and Peebles. In Mackie's draft, Paragraph 1 of the document read as follows:

  1. The undersigned agree that upon issuance of the final cultivation, processing or dispensary license, that the members of DO Maryland OP LLC, will draft a new operating agreement before the removal of Jeff Black as the manager of DO Maryland OP LLC.  The members of DO Maryland LLC agree that Black shall have no less than a 4.75% Class A interest, Ashley Peebles with no less than 1.5% Class A Interest, Mackie Barch with no less than 26.875%

---

[1] Josh presumes that the time stamps referenced in the emails described in these Responses all refer to Mountain Time.

Class A interest and David Joshua Bartch with no less than 26.875% Class A interest in Doctor's Orders Maryland LLC, which such interest may be through DO Maryland OP, LLC, the current majority member of Doctors Orders Maryland LLC. These share [sic] are subject to mutually agreed upon dilution and do not reflect future capital raises.

- At 3:57 p.m. on January 23, 2017, Peebles responded to Mackie's 3:46 email: "Mackie, Thank you for reaching out. Unfortunately, asking to have this back to you within such a short time period is not practical. I will need sufficient time to review and discuss the ramifications of this with my legal team. I will respond as soon as I am able."

- At 4:00 p.m., Mackie responded to Peebles (copying Josh, Black, Charlie Alovisetti, and Brian Vicente): "Ok, I'll just remove you for now. This was just for Jeff…" (ellipses in original).

- At 4:34 p.m., Mackie wrote an email to Black and Josh with the subject line "Please sign." Mackie wrote: "I removed Ashley as I knew adding him would cause issues… We do need to do this in a more formal fashion but we need to get this wire done first…." (ellipses in original). A revised draft was attached to this email removing Peebles' signature line.

- At 4:48 p.m., Mackie sent an email to Black and Bartch attaching Exhibit A to the Complaint with the subject line "Signed Document." In the email, Mackie wrote: "Signed by Mackie and [J]osh."

Based on the above-described communications, all of which will be produced in Josh's forthcoming document production, it appears that Ms. Mehlert prepared the first draft of Exhibit A to the Complaint at Black's request and that Mackie then made the revisions that resulted in the final version of the document.

19.    Do you claim Exhibit A to the Complaint is a valid and binding contract?

**RESPONSE**: Josh objects to this Interrogatory on the grounds and to the extent that it calls for a legal conclusion and thus seeks information that is subject to the attorney client privilege and/or

the work product doctrine. Subject to and without waiving the foregoing objection, Josh's position is that Exhibit A to the Complaint is evidence of the parties' agreement.

20.     Set forth the factual basis for your contention in paragraph 40 of the Complaint that they agreed that DOMD, or if it failed to do so, DO Maryland, would pay the costs of any state or federal audit that resulted because Black held your interest through DO Maryland.

**RESPONSE**: The factual basis of Josh's allegation in Paragraph 40 of the Complaint is Exhibit A to the Complaint, a document signed by Josh and Mackie, in which Josh and Mackie state that "In the event that Black is subject to a state or federal audit as a result of Black's interest in Doctors Orders Maryland LLC or DO Maryland OP LLC, all costs incurred in connection with such audits will be supported by Doctors Orders Maryland LLC. Should Doctors Orders Maryland LLC be unwilling or unable to support such financial expense, it will be the responsibility of DO Maryland OP LLC to reimburse Black for such audit costs within 30 days."

DATED: July 11, 2019

*s/ Paul H. Schwartz*

James E. Nesland
LAW OFFICES OF JAMES E. NESLAND
4252 E. Caley Avenue
Aurora, Colorado 80016
(303) 807-9449
jenesland@comcast.net

Paul H. Schwartz
Jonathan A. Helfgott
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, Colorado 80302
(303) 530-3452
pschwartz@sgslitigation.com
jhelfgott@sgslitigation.com
*Attorneys for Plaintiff David Joshua Bartch*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2019, a true and accurate copy of the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT MACKIE A. BARCH'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DAVID JOSHUA BARCH** was served via Email on all counsel of record.

*s/ Sarah B. Lee*

## VERIFICATION

I, David Joshua Bartch, hereby swear upon penalty of perjury that the responses to interrogatories set forth above are true and correct to the best of my knowledge, information, and belief.

David Joshua Bartch