IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-3016-MSK-NYW

DAVID JOSHUA BARTCH,

    Plaintiff,

v.

MACKIE A. BARCH, and
TRELLIS HOLDINGS MARYLAND INC.,

    Defendants.

___

**OPINION AND ORDER DENYING, WITHOUT PREJUDICE, MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 90)**, the Plaintiff's response **(# 96, 97)**, and the Defendants' reply **(# 101)**. Also pending are the Defendants' Objections **(# 78)** to the Magistrate Judge's December 2019 Order **(# 70)** denying the Defendants' Motion to Compel **(# 59)**, and the Plaintiff's response **(#84)**, and two unopposed motions **(# 83, 100)** seeking to restrict public access to various filings in this case.

## FACTS

This case presents a veneer of complexity, arising from an elaborate series of corporate structures and transactions and, often, an absence of key facts in the record. But the gist of the underlying dispute is relatively simple: the Plaintiff[1] nominally transferred his interests in a

___

[1] Due to the individual parties' phonetically-similar last names, they will be referred to as the Plaintiff and Defendant Barch, respectively. This election has no substantive significance.

1

medical marijuana business to satisfy the requirements of the conditions of a deferred criminal judgment and when the probationary period associated with that judgment expired, Defendant Barch would not return his interests.

The Plaintiff is an entrepreneur in the medical cannabis business, having formed and operated a Colorado medical marijuana sales entity known as Doctors Orders LLC, often referred to as DO Denver. With the hope of expanding his business into other states, the Plaintiff then created Doctors Orders Group LLC (DO Group) under Delaware law.[2]

In 2104, the Plaintiff was charged with misdemeanor drug possession in Colorado, to which he agreed to a two-year deferred judgment with a probationary period running from November 2014 to December 2016. During that period, he was obligated to comply with a number of restrictions including that he not violate state or federal law.

Early in 2015, the Plaintiff learned that the State of Maryland had legalized the sale of medical marijuana and that there would be a competitive process to award licenses, and he intended to capitalize on that opportunity by expanding the Doctors Orders business to Maryland. In February of 2015, the Plaintiff filed a motion with the Colorado court, seeking clarification of the probation restrictions as they applied to operation of medical marijuana businesses. At the hearing on the Plaintiff's motion in mid-June, the state district court judge ruled that the term of the plea agreement prohibiting the Plaintiff from violation of any law

---

[2] Due to the name similarity in the parties' various entities but their different acronyms, the Court will adopt the following:

Doctors Orders LLC = DO Denver
Doctors Orders Group LLC = DO Group
Doctors Orders Maryland LLC = DO Maryland
Doctors Orders Maryland OP = DOMDOP

2

precluded involvement in any aspect of the medical marijuana business because it violated federal law.[3] The court continued the hearing to allow the Plaintiff time to consider whether to appeal the decision or to divest his interests in medical marijuana businesses.

Apparently, prior to the ruling, the Plaintiff had decided to pursue the Maryland opportunity. He solicited Defendant Barch, a Maryland resident, "to become part of" the DO Group. Defendant Barch was paid for full-time work as a consultant to spearhead expansion of the Doctors Orders medical marijuana business into Maryland. In or about June 2015 – its timing relative to the Colorado court's order prohibiting the Plaintiff's participation in marijuana businesses is unclear -- the Plaintiff created DO Maryland[4] to obtain licensing and operate the medical marijuana business in Maryland. Rather than owning DO Maryland outright, however,

---

[3]   The transcript of the hearing reflects:

> "The Court will determine that Mr. Bartch's participation in or ownership in a medical marijuana business, although it may be legal under state law, is nevertheless currently a violation of federal law and on-going participation and /or ownership in that business would represent a violation of the terms and conditions of the deferred judgment."

[4]   An operating agreement dated July 6, 2015 for DO Maryland is attached to the Defendants' motion. The parties to it are DOMDOP (by the Plaintiff, as manager) and TJ Health LLC (executed by Tyler Weinberg, as manager). It refers to the creation of 4 Classes of ownership "units", held by Members. Pertinent are Classes A, owned by DOMDOP, which held 70% of issued units, and Class B owned by TJ Health owned 30% of issued units. The agreement provides that no ownership interest can be transferred except with permission of the other Members or in accordance with the agreement. In addition, Maryland law governs "all questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed" by it. The venue for any suit involving the agreement is Maryland.

DO Maryland LLC's amended and restated operating agreement dated November 5, 2015 refers to a prior amendment entitled "Existing Agreement" dated October 1, 2015, which agreement is not in the court record. No change is made to the operative law and venue provisions in the original agreement, nor to the restrictions on transfers of units. It appears that its purpose to was to issue units to Classes C and D, diluting the Class A interest of DOMDOP to 60.5%. Of note, it is executed by Mr. Jeff Black as the manager of both DO Maryland and DOMDOP.

the Plaintiff then created an investment entity, DOMDOP,[5] that would own a 70% interest in DO Maryland described as Class A.  To avoid the appearance of having ownership in DOMDOP, and thus DO Maryland, the Plaintiff arranged for his ownership of DOMDOP to be held by two associates, Mr. Black and Mr. Peebles, instead.  However, all three men appeared to understand that Mr. Black and Mr. Peebles held ownership of DOMDOP for the Plaintiff's benefit and that his interest would be returned after the terms of the deferred judgment were satisfied.

The documentation relative to the formation of DOMDOP and its acquisition of the Class A interest in DO Maryland interest is curious.  Neither party has proffered documents showing a transfer of DO Maryland's ownership to DOMDOP, the terms of the transfer, the consideration for such transfer or compliance with the terms of organizational documents.  Indeed, the only Limited Liability Agreement in the record for DOMDOP is dated in November 2015 and it characterizes  Mr. Peebles as an initial member of DOMDOP.  There is no mention of the Plaintiff or his prior interest which tied to the structure of DO Maryland created in July 2015.

Several important events transpired in late 2015,  2016 and early 2017.   DO Maryland filed for Maryland medical marijuana licenses.  The Plaintiff decided that he would share "his" interest in the Maryland medical marijuana business and entities in other states as it expanded with Defendant Barch.  He thought that Defendant Barch should have a 50% interest, equal to his own, in the Maryland operation and any future business opportunities in which the men

---

[5]      The only operating agreement for DOMDOP is dated November 6, 2015, executed by Mr. Black, as managing member and Mr. Peebles as initial member. This document refers to the formation of DOMDOP on July 5, 2015, although no organizational documents of that date are of record. The agreement mentions that the members are listed on Exhibit A, but no Exhibit A has been supplied. Of note, the agreement specifies in paragraph 8.1 that members are limited in their ability to transfer interests, and in paragraph 11.7 that agreement is governed by and construed in accordance with Maryland law.

participated.  Finally, Mr. Black advised the Plaintiff and Defendant Barch that he was concerned that his holding of the Plaintiff's interest in DOMDOP would cause him tax problems.

In light of these events, as well as the successful conclusion of the Plaintiff's probation in Colorado, on January 23, 2017, the Plaintiff, Defendant Barch, and Mr. Black agreed that upon issuance of medical marijuana licenses to DO Maryland, modified operating agreements for both DO Maryland and DOMDOP would be prepared. Mr. Black would be removed as DOMDOP's manager and DOMDOP's Class A ownership interest in DO Maryland would be allocated as follows: 4.75% to Mr. Black; 1.5% to Mr. Peebles; 26.875% to Defendant Barch; and 26.875% the Plaintiff.  It is important to note that the January 2017 agreement does not, of itself, effect any transfer of interests; it merely memorializes an agreement among those parties to modify DOMDOP's operating agreement <u>in the future</u> to reflect those terms.  The record contains no modified operating agreement for DOMDOP, nor any evidence that such an agreement was ever executed.

In April 2017, Defendant Barch formed a new entity, Trellis Holdings Maryland ("Trellis"), of which he was the sole owner.  By means that are unclear in the record, Trellis acquired 64% of the Class A units in DO Maryland, apparently from DOMDOP, including the interests ostensibly allocated to the Plaintiff, Mr. Black and Mr. Peebles under the January 2017 agreement.  An undated and  highly redacted Second Amended and Restated Operating Agreement for DO Maryland is found at Docket #90-14. Its Exhibit A no longer lists DOMDOP as a Class A interest holder, but instead lists several others.  There is no explanation in this document or elsewhere in the record for how DOMDOP's interest was transferred, much less that it was transferred in accordance with the prior operating agreement.   The Plaintiff believes that his ownership interest in DOMDOP (and thus DO Maryland) became an interest in Trellis –

one held for his benefit by Defendant Barch[6], but the record is largely silent as to the reasons why and circumstances under which Trellis was formed, and any agreements that the Plaintiff and Mr. Barch had at that time.

In June 2017, a prospective buyer offered to purchase Trellis' interest in DO Maryland for approximately $10 million, but the deal fell through.  At some point in time – the Complaint is not clear – the Plaintiff "requested that Defendant Barch have Trellis transfer his 50% share of Trellis' stock in [DO Maryland] to him."  When Defendant Barch refused, this litigation followed.

## THIS ACTION

In this action, the Plaintiff asserts seven claims, all arising under state law.  The parties have not specifically addressed the question of which state's law governs most claims, and in the absence of such argument, the Court will assume, without deciding, that Colorado law applies to each.  The claims can be loosely grouped into those founded on a *legal* right and those seeking an *equitable* remedy in the event that the Plaintiff has no enforceable legal right.

**Claims premised on a legal right/interest are:**

Claim I - requesting a declaratory judgment that "Trellis legally holds and is obligated to transfer 50% of Trellis' [DO Maryland] stock to" the Plaintiff;

Claim II - for civil theft, in violation of C.R.S. § 8-1-401, in that "Defendant Barch and Trellis have refused to convey the interest to the Plaintiff on demand";

Claim III - for conversion, based on essentially the same theory;

---

[6] There is some evidence in the record reflecting Defendant Barch's understanding that the Plaintiff was entitled to a portion of DO Maryland ownership held by Trellis.  For example, when a buyer was considering purchasing DO Maryland, Defendant Barch mentioned that "his and [the Plaintiff]'s shared ownership" was for sale.

Claim V - a request for specific performance of a contract, namely that "Defendant Barch and Trellis agreed that Trellis would hold 50% of its [DO Maryland] stock . . . for the benefit of the Plaintiff" and that the Plaintiff has satisfied "all conditions precedent to Defendant Barch and Trellis obligation" to transfer that interest back to The Plaintiff;

Claim VI - breach of contract, according to the same theory.

**Claims founded in equity in the absence of a no legal right:**

Claim IV - for "judicial recognition of a constructive trust," in that Defendant Barch and Trellis hold 50% of its [DO Maryland] stock for the Plaintiff's benefit;

Claim VII – for compensation based on Defendant Barch's and Trellis' unjust enrichment.

Defendant Barch and Trellis move **(# 90)** for summary judgment on all claims, contending that they are all based in contract and that the affirmative defense of illegality is applicable to all. The Defendants argue that the Plaintiff cannot enforce contract rights because the contract he seeks to enforce had an illegal purpose: to circumvent the conditions of his probation by concealing his beneficial interest in DOMDOP and DO Maryland from the Colorado court and to conceal his involvement in DO Maryland from Maryland licensing authorities.

Before proceeding to the merits of the argument, the Court notes two issues in passing. First, that at least two of the Plaintiff's claims are founded in equity, and consequently do not arise until or unless he has no enforceable legal rights. Thus, if the Defendants are correct that all the legal right claims are dismissed, the equitable ones would remain.[7]

---

[7]  Arguably, the fact that the Plaintiff created this scheme to "illegally" conceal his beneficial ownership of DO Maryland could so overwhelm the balancing of the equities that the Court could grant summary judgment to the Defendants on the equitable claims as well. But

7

Second, although the parties intermittently cite Colorado law, the Court is not sanguine that it applies to the issue of whether the Plaintiff has a legal or equitable interest in Trellis. Although the Court has not been presented with all of the operative organizational documents for DOMDOP and DO Maryland (and none for Trellis), it appears that all are Maryland-created entities and those documents that have been presented contain specific restrictions as to transfer of interests and require application of Maryland law to determine ownership issues.

In response to the Defendants' motion, the Plaintiff argues that there were two contracts that led up to this controversy. The first was between the Plaintiff, Mr. Black, and Mr. Peebles with regard to the Plaintiff's interest in DOMDOP. The second was between the Plaintiff and Defendant Barch with regard to a 50/50 split in equity in the operations in Maryland and elsewhere. The Plaintiff argues that the Defendants' illegality argument pertains only to the first contract concerning his interest in DOMDOP, which he cannot and is not attempting to enforce against the Defendant. Instead, he is attempting to enforce a contract in which "Defendant Barch and the Plaintiff agreed that they would share all future equity in the Maryland business and other non-Colorado businesses 50/50."

In reply, Defendant Barch and Trellis argue that the Plaintiff "should be held to the contract stated in his complaint" (which they construe to be one that initially sought to conceal the Plaintiff's ownership), and further argue that if the second contract is one that arose in November 2015, it is merely the continuation of the same illegal scheme to conceal the Plaintiff's beneficial ownership and thus is also unenforceable.

---

given that Defendant Barch was a knowing participant in some portion of the ownership shell game, it is more likely that the parties' relative level of culpability is just one facet of an equitable analysis that must be assessed through trial.

8

Separately, Defendant Barch and Trellis have moved **(# 59)** to compel the Plaintiff to respond to interrogatories concerning his involvement in lawsuits, mental health or substance abuse treatment, government investigations, and judgments or other liens. Defendant Barch and Trellis argued that the Plaintiff's responses would bear on his ability to satisfy the demands of Maryland regulators if he were to obtain an ownership stake in DO Maryland. The Plaintiff responded that the interrogatories are irrelevant and intended to harass. In October 2019, the Magistrate Judge denied **(# 70)** the motion to compel, finding that the requests had only "limited relevance" to the claims and defenses at issue and were not proportional to Defendant Barch and Trellis' needs. Defendant Barch and Trellis have Objected **(# 78)** to the Magistrate Judge's ruling arguing that there was error in the finding that the requested information was minimally-relevant. Instead, they argue, the Magistrate Judge should have found relevance to this litigation because if such information was disclosed to Maryland regulators, it "would . . . doom the application" of DO Maryland for a license, thereby demonstrating a motive for the Plaintiff to conceal his purported ownership interest.

Finally, there is a request by the Plaintiff **(# 83, 100)** seeking to restrict public access to certain portions of his summary judgment response and various exhibits attached thereto, as well as to exhibits attached to his response to Defendant Barch and Trellis' motion to compel.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Illegality of Contract

In Colorado – and for that matter, in Maryland as well – courts generally will not enforce a contract whose purpose seeks to achieve an unlawful[8] end. *See generally Guardian Title Agency, LLC v. Matrix Capital Bank*, 141 F.Supp.2d 1277, 1281 (D.Colo. 2001), *citing Sender v. Simon,* 84 F.3d 1299, 1307 (10th Cir. 1996); *see also Post v. Bregman*, 707 A.2d 806, 815 (Md.App. 1998) ("a contractual provision that is in violation of public policy, to the extent of the conflict, is invalid and unenforceable"). A contract may be unenforceable even if the performances called for under its terms are themselves permissible if the purpose the contract seeks to achieve is wrongful. *Sender*, 84 F.3d at 1307. Illegality of a contract or its unenforceability due to public policy is generally treated as an affirmative defense, such that the party asserting unenforceability bears the burden of proof. The question of unenforceability is usually a question of law to be resolved by the Court, but where the terms of the agreement or the underlying facts are disputed, the Court should defer to the factfinder's determinations before assessing the question of unenforceability. *See generally Mulligan v. Smith*, 76 P. 1063, 1066 (Colo 1904). Thus, here, the Defendants bear the burden of demonstrating that the contract the Plaintiff seeks to enforce – ostensibly the "agreement" with Defendant Barch to "share" equally the ownership of DO Maryland – contravenes some clearly-expressed public policy of the state of Colorado or Maryland.

---

[8] Although referred to by the parties as the defense of "illegality," modern commentators prefer to describe the doctrine as one preventing enforcement of a contract whose purpose is contrary to public policy. *See Restatement* (Second), Contracts, Ch. 8, Introductory Note.

11

The Court finds that it cannot reach the legal question of enforceability of any contract because there are genuine disputes of material fact as to the nature and content of the contract that the Plaintiff seeks to enforce. There is a dispute between the parties – and in fact, some hesitancy by the Court – as to what, if any, contract is at issue here, much less the terms of that contract and its purposes. And even then, there is some question as to whether enforcement of the resultant agreement would indeed contravene public policy

Turning first to the contract that is actually at issue here, the Complaint is not particularly clear. Claims V and VI allege only that Defendant Barch and Trellis agreed to "hold 50% of the Class A membership interest held by Trellis" for the benefit of the Plaintiff. No specific contract is mentioned, but one can assume the contract being described is some sort of agreement between the Plaintiff and Defendant Barch, not one involving Mr. Black or Mr. Peebles. The Plaintiff's briefing states that the operative contract is one that he entered into with Defendant Barch in or about November 2015. According to the Plaintiff's deposition, in November 2015, "we" – apparently meaning the Plaintiff and Defendant Barch – "decided that we were going to make Trellis" -- which did not yet exist but perhaps was anticipated -- "a national holding company, and we were going to share everything 50/50 except for the Colorado operations." This agreement would appear apply to interests in DO Maryland.

But describing this alleged "contract" as an "agreement" to "share everything 50/50" runs counter to how the Plaintiff describes the situation in his deposition. The Plaintiff explained that he had enjoyed working with Defendant Barch in Maryland and he anticipated starting similar business in other states, so "I felt like, if we're going to partner and I'm going to work with this guy on every single project, it would be, one, selfish of me to keep all the equity, and then, two, that he deserved it." The Plaintiff was asked "did Defendant Barch ask you for that?," to which

12

he responded "Sort of. . . he was a Maryland resident. He lived in Maryland; I didn't. I had no intention of ultimately moving to Maryland. So, from that aspect, he was going to be in charge of and run the day-to-day on – on the Maryland business if we were successful." The Plaintiff acknowledged that, at the time, Mr. Black and Mr. Peebles nominally owned DOMDOP, and that "they agreed" to give half of DOMDOP's ownership in DO Maryland to Defendant Barch.

This testimony is problematic for the Plaintiff because it does not describe a contract at all. What the Plaintiff initially characterizes as an "agreement" to "share everything 50/50" appears, upon further explanation, to be a gift[9] by the Plaintiff to Defendant Barch of 50% of "his" equity in DO Maryland, either as a reward for Defendant Barch's work to date or in anticipation of a harmonious working relationship in the future. There does not appear to be any clear indication of consideration given by Defendant Barch for receipt of the 50% interest in anything. Although there is a reference to an "agreement" by Defendant Barch to "split everything" the parties would do in the future, it is not clear that Defendant Barch independently held any equity interests in any other projects that he could "split" with the Plaintiff, nor that the two had any other business interests in which Defendant Barch was claiming some disputed degree of ownership. Thus, even the alleged "split" appears to be another promised gift by the Plaintiff to Defendant Barch – a promise that if Defendant Barch continued to work on DO Group projects, the Plaintiff would reward him with equity stakes in future businesses, as well.

---

[9] Characterization of the Plaintiff's actions as a gift is also consistent with the only reference in the Complaint to this alleged agreement. In Paragraph 37, The Plaintiff states that "During 2016," (rather than November 2015), "[the Plaintiff] agreed that Defendant Barch should share 50% of the shares held by DOMDOP for the Plaintiff." Once again, the allegation suggests that the Plaintiff believed that he was making an unconditional gift of 50% of "his" interest in DO Maryland to Defendant Barch.

13

Thus, it is unclear that the purported "agreement" of November 2015 is a contract at all, and the Plaintiff points to no other agreement that purportedly supports his contract-based claims.

Nor is it clear how and under what circumstances Trellis was formed and how it acquired the DOMDOP interests in DO Maryland. It seems to be undisputed that Defendant Barch had sole ownership of Trellis, but the terms of Trellis' acquisition of DOMDOP's interest in DO Maryland is unclear. By April 2017, the Plaintiff had completed his probationary sentence, removing that particular obstacle to his ownership in DOMDOP. (There remained, perhaps, concern about how the Plaintiff's involvement would appear to Maryland regulators.) Trellis purportedly acquired both the Plaintiff's and Defendant Barch's interests[10] in DOMDOP, but the record does not seem to disclose how that transfer was authorized, by whom, and under what circumstances or subject to what limitations.[11] It is not clear, for example, who authorized DOMDOP to transfer its interest in DO Maryland to Trellis, nor on what terms. Furthermore, it is unclear who held interests in DOMDOP at the time its interest in DO Maryland was transferred to Trellis. Without answering these questions, the Court is unable to meaningfully

---

[10]   This presupposes, of course, that the Plaintiff and Defendant Barch had "designated interests" of DOMDOP. As mentioned above, the record contains only an "agreement to agree," by which Mr. Black agreed to restructure DOMDOP to expressly convey its majority ownership to the Plaintiff and Defendant Barch, but there is no evidence in the record to suggest that that restructuring actually occurred, much less that it was done so in a way that was legally effective. The parties here assume that it was, and that DOMDOP later conveyed those interests to Trellis (again via a mechanism that is not clear in the record), but it is by no means clear to the Court that ownership of DOMDOP has yet to pass from Mr. Black and Mr. Peebles' hands.

[11]   For example, Defendant Barch's deposition testimony seems to suggest that "the transaction [to Trellis] never happened. This was done under the context of a large Canadian deal coming in that never happened." Thus, it appears that Defendant Barch believes the transfer of DOMDOP's interest in DOMDOP to Trellis either never occurred or was only intended as a temporary measure to deal with a prospective buyer of some portion of the Doctors Orders business, and that the eventual ownership of DOMDOP and DO Maryland was subject to some under unspecified understandings or conditions.

14

assess the public policy implications of any alleged agreement between the parties that led to those interests being acquired by Trellis and controlled by Defendant Barch.

Finally, even if the Court had a full understanding of the maneuverings of the parties' transactions, the question of whether any agreement concerning those interests was void against public policy are also unclear and apparently disputed. There is no material dispute that the Plaintiff transferred his interest in DOMDOP to Mr. Black and Mr. Peebles to satisfy the Colorado court's prohibition against owning a medical marijuana business between November 2014 and December 2016. But it is not at all clear, that the transfer had a wrongful purpose. The Court's ruling offered the Plaintiff the option of divesting but did not specify whether that was divestment for the period of probation or permanently. Thus, the temporary divestment by the Plaintiff is not necessarily evidence of an improper purpose.

The record reflects that the Plaintiff and Defendant Barch agreed that the Plaintiff would reclaim his ownership interest in DOMDOP as of January 2017, and that the operating agreement of DOMDOP would be restructured to expressly provide both the Plaintiff and Defendant Barch with roughly 25% of DOMDOP's interests in DO Maryland. Indeed, Defendant Barch's 25% interest DOMDOP depended on the Plaintiff having an interest to transfer to him.

This leads to several conclusions. To the extent that the Plaintiff had been involved in a scheme to defraud the Colorado court – and this Court need not resolve that question – it would appear that that scheme was completed as of January 2017. In addition, Defendant Barch benefitted from the return of the Plaintiff's interest in DOMDOP to him (hence, the transitory nature of the divestment of the Plaintiff's interest).

The operative event giving rise to this litigation did not occur until several months later, when Defendant Barch, through Trellis, acquired control of the ownership interests that the Plaintiff claims. Thus, it does not appear that the probationary sentence constitutes a basis for a finding that the contemplated "contract" – whatever it may be – is grounds for a finding of unenforceability.

The Defendants make a second argument – that the Plaintiff's concealment of his beneficial interest is intended to deceive Maryland regulators about the true ownership of DO Maryland. But the record on that point is underdeveloped. Defendant Barch, in his deposition, denied that the transfer of DOMDOP interests to Trellis was intended to conceal information from Maryland regulators. And the January 2017 amendment to DOMDOP's operating agreement expressly identified the Plaintiff as a part-owner of DO Maryland, further suggesting that at attempt to conceal that ownership may not have been the purpose of the transaction. Before the Court can determine whether the return of an interest in DOMDOP to the Plaintiff, or transfer of a portion of such interest to Defendant Barch, or the transfer of DOMDOP's interest in DO Maryland to Trellis were repugnant to public policy, the Court must first know the reasons each. But neither the parties nor the record are particularly clear on what those reasons were. Thus, the Court cannot find that the Defendants' are entitled to judgment as a matter of Colorado or Maryland law.

Ultimately, if the reasons for the transfer of interests in DOMDOP to Trellis are disputed – and it appears that they may be -- it will be for the factfinder to determine <u>why</u> the Plaintiff's interest in DOMDOP came to be owned by Defendant Barch. Only after those findings are made – at trial, presumably – can the Court then consider the question of whether those reasons frustrate public policy.

16

Accordingly, the Court denies Defendant Barch and Trellis' summary judgment motion without prejudice.  Within 30 days of this Order, the parties shall confer in an effort to agree upon and identify the date and terms of the alleged contract, including the particular term that Defendant Barch and Trellis have allegedly breached.  Having done so, either party may file a new summary judgment motion that addresses any arguments relating to that contract, including identifying any evidence in the record that reflects the parties positions regarding the reasons by which that contract was formed and whether those purposes are contrary to public policy. Alternatively, if the parties conclude that no further dispositive motions are warranted, they shall contact the presiding magistrate judge to schedule a settlement conference.

### D.  Defendant Barch and Trellis' Objections

Defendant Barch and Trellis object to the Magistrate Judge's Order denying their motion to compel.  The Court reviews the objected-to portions of the Order to determine whether the Magistrate Judge's conclusions are clearly erroneous or contrary to law.   Fed. R. Civ. P. 72(a). Under the "clearly erroneous" standard, the Court must affirm the ruling unless the Court has "a definite and firm conviction" that the Magistrate Judge "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Allen v. Sybase, Inc*, 468 F.3d 642, 658 (10th Cir. 2006).

Extended discussion of this issue is not necessary, as the Court agrees with the Magistrate Judge that Defendant Barch and Trellis' requests are of minimal relevance to the issues in this case, such that the burdens on The Plaintiff in responding warrant denial of the motion to compel.  The information that Defendant Barch and Trellis request are intended to explore concerns as to whether the Plaintiff's ownership of some or all of DO Maryland would result in adverse licensing or regulatory decisions by authorities in Maryland.  But the question of

17

whether Maryland might look unfavorably on DO Maryland if the Plaintiff secured an ownership stake is not germane to the questions presented in this case – namely, whether Defendant Barch and Trellis previously incurred any obligation to tender ownership interests in Trellis to the Plaintiff.

It may be that Defendant Barch and Trellis' concerns are justified and that if the Plaintiff prevails in this case and obtains a stake in DO Maryland, Maryland authorities may modify or even revoke DO Maryland's business license, making the Plaintiff's victory largely pyrrhic. But the question of whether it is <u>wise</u> for the Plaintiff to pursue his claims in this action is not a question that this Court can consider. And the question of whether the Plaintiff can compel Defendant Barch and Trellis to deliver an ownership interest in Trellis is not affected by the issues that Defendant Barch and Trellis seek to discover. Accordingly, the Court overrules Defendant Barch and Trellis' Objections and affirms the Magistrate Judge's ruling.

### E. Motions to Restrict

The Plaintiff has filed two motions (**# 83, 100**) seeking to restrict public access to certain portions of his summary judgment response and various exhibits attached thereto, as well as to exhibits attached to his response to Defendant Barch and Trellis' motion to compel.

The Court will not repeat the familiar standards that govern motions to restrict, except to note generally the presumption in favor of public access that requires parties seeking restriction to make a substantial showing that privacy interests and the risk of harm resulting from public disclosure outweigh the publics strong interest in access to records submitted to the Court for evaluation. *See generally* D.C. Colo. L. Civ. R. 7.2.

The Court has reviewed all of the materials that The Plaintiff requests to restrict and finds as follows. The bulk of The Plaintiff's showing of privacy interests is premised upon

confidentiality designations made by the parties during discovery.  Pursuant to D.C. Colo. L. Civ. R. 7.2(c)(2), such designations, in and of themselves, are insufficient to justify restriction.  The Plaintiff makes more generalized arguments that disclosure of the documents "could seriously damage [Doctors'] business interests in a highly competitive industry," but does not meaningfully elaborate either as to what information likely would have such effect, or why it would do so.  Such vague and conclusory arguments are insufficient to carry the burden of overcoming the strong presumption of public access to documents submitted to the Court.

Accordingly, the motions are denied.  The Clerk of the Court shall lift the provisional restrictions on all materials at Docket # 75 and 96.

## CONCLUSION

For the foregoing reasons, Defendant Barch and Trellis' Motion for Summary Judgment **(# 90)** is **DENIED** without prejudice to the filing of another dispositive motion within 30 days of this Order.  Defendant Barch and Trellis' Objections **(# 78)** are **OVERRULED** and the Magistrate Judge's December 2019 Order **(# 70)** is **AFFIRMED**.  The Plaintiff's Motions to Restrict **(# 83, 100)** are **DENIED**, and the Clerk of the Court shall life the provisional docket restrictions on Docket #75 and 96.

Dated this 30th day of November, 2020.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge