**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-03016-RBJ-NYW

DAVID JOSHUA BARTCH,

     Plaintiff,

v.

MACKIE A. BARCH and
TRELLIS HOLDINGS MARYLAND, INC.,

     Defendants.

---

**PLAINTIFF'S MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS JONATHAN A. HAVENS, ESQ.; JEFFREY S. PAGLIUCA, ESQ.; BRIAN A. FLANK, ESQ.; and BRIAN VICENTE, ESQ**

---

As this Court has explained: "[S]imply put, an expert may not tell the Court what the law is." *Wildearth Guardians v. Pub. Sev. Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) (Jackson, J.). In their expert disclosures, however, Defendants endorse four attorneys, each of whom seeks to do precisely that.

Defendants disclosed their experts to support their alleged affirmative defenses that Plaintiff seeks to enforce an unenforceable agreement in violation of public policy. The witnesses propose to summarize Maryland regulatory law and Colorado criminal law about the legality of hypothetical agreements and Plaintiff's supposed motives for such agreements. Such testimony would be nothing more than attorney argument in the guise of expert opinion and thus would be unhelpful to the Court under Fed. R. Evid. 702. An expert may not "state legal conclusions drawn by applying the law to the facts."

*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003). An expert can "*refer to the law in expressing [an] opinion,*" but may not tell the finder of fact "what legal standards must guide their verdict." *MCC Mgmt of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 822 (10th Cir. 2012).

Defendants' expert opinions also are irrelevant. Two agreements form the factual basis of this case, which concerns the ownership of equity interests in Maryland medical cannabis company Culta, LLC, formerly known as Doctors Orders Maryland, LLC ("DOMD"). Importantly, however, only one of those agreements – the one between the parties – is what Plaintiff seeks to enforce. The agreement Defendants' experts opine is "illegal" is *not* the agreement Plaintiff seeks to enforce. It is simply part of the chronology of the case, necessary to understand the relationship between the parties and the interests at issue. As a matter of law, the affirmative defenses of unenforceability and illegality must relate to *the contract the Court is being asked to enforce*. Because Defendants' expert opinions do not, they will not meaningfully assist the Court.

**Certificate of Conferral**: Pursuant to D.C.COLO.LCivR. 7.1(a), undersigned counsel conferred with counsel for Defendants regarding this Motion. Defendants oppose the relief requested.

## BACKGROUND

Plaintiff ("Josh"),[1] an entrepreneur with a track record of success in the regulated medical cannabis industry, founded DOMD in 2015. *See* Dkt. 96 at 3, 5. Around the same

---

[1] Consistent with past practice in this matter, Plaintiff refers to himself as "Josh" and to Defendant Mackie Barch as "Mackie" due to the similarity in the parties' last names.

time, Josh hired Mackie, a Maryland resident, to assist with his efforts to expand his business into Maryland. At its inception in 2015, Josh owned a 70% interest in DOMD (through a holding company called DO Maryland OP, LLC, or "DOMDOP"), with investors Tyler and Glenn Weinberg owning the rest. *Id.* at 5; *see also* Dkt. 96-6 at 7.[2]

In November 2014, Josh entered into a deferred judgment stipulation in Colorado related to a misdemeanor drug charge.  Dkt. 96-1. At a June 2015 hearing, the Denver District Court ruled that, although lawful in Colorado, owning a medical marijuana business would violate the terms of Josh's deferred judgment because such ownership violates federal law. Dkt. 96-2 at 16-17. Recognizing the "unplowed ground" created by the tension between state and federal law, the Denver District Court did not find Josh in violation of his deferred judgment. *See id.* at 17-18. Nor did the Colorado court order Josh to divest from his medical cannabis companies. Instead, the court advised that if, after conferring with counsel, Josh chose to divest himself of such ownership, the court would allow him a reasonable time to do so. *See id.*

After the court's ruling, and on advice of counsel, Josh transferred his ownership interest in DOMDOP (which held Josh's DOMD ownership units) to non-parties Jeff Black and Ashley Peebles, who agreed to hold the equity on a 75/25 basis until Josh asked for it back (the "Temporary Ownership Agreement"). Dkt. 96-47 at pp. 69:17-25; 147:24-149:3; 169:13-170:22. Upon returning the interests to Josh, Black and Peebles would retain approximately 4.5% and 1.5% ownership interests, respectively. *Id.* p. 150:18-

---

[2] Unless stated otherwise, all citations to pages in ECF documents refer to the ECF-generated page number rather than any pagination that appears in the document itself.

151:8. On November 5, 2015, DOMD restated its operating agreement to, among other things, substitute Black for Josh as DOMD's manager. Dkt. 96-9 at 11.

Separately, while they were in the process of setting up DOMD and applying for Maryland licensure, Josh, Mackie, and the Weinbergs began planning further expansions of the Doctors Orders business into Hawaii, Massachusetts, and Oregon. In furtherance of this partnership and planned national expansion, in November 2015 Josh and Mackie agreed to form a partnership by which, among other things, Josh and Mackie would share any interest they acquired in cannabis companies equally, including any ownership interest they acquired in DOMD (the "Partnership Agreement"). Dkt. 96-47, at 263:11-267:16. At the time, neither Josh nor Mackie owned any equity in DOMD. Dkt. 96-11 at 14. Instead, they expected to own such equity in the future.

While Black and Peebles were not parties to the Partnership Agreement, they were made aware of it in communications they received from Mackie. *See generally* Dkt. 96 at 11; Dkt. 96-17; 96-18. Accordingly, sometime before June 30, 2017, Black and Peebles transferred their interests in DOMD (minus their agreed-upon percentages) to Defendant Trellis Holdings Maryland ("Trellis"). Dkt. 96-19 at 5 (explaining that DOMDOP assigned units to an entity owned by Barch, among others). Around the same time, Mackie told Josh that he had formed Trellis for the purpose of holding "our shares" (*i.e.*, Mackie's and Josh's equity) in DOMD. *See* Dkt. 96-22.

When Josh asked Mackie to honor the Partnership Agreement and deliver Josh's half of Trellis's DOMD ownership interest, Mackie repudiated the agreement and kept the entire ownership interest himself. Josh then filed this lawsuit, asserting claims for breach

of contract, civil theft, constructive trust, declaratory judgment, and unjust enrichment related to Mackie's breaches of the Partnership Agreement. *See generally* Complaint. Josh asserts no claims related to the Temporary Ownership Agreement with Black and Peebles.

### *Challenged Expert Opinions*

Defendants endorse four experts to support their affirmative defenses of unenforceability and violation of public policy, for which they sought (and were denied) summary judgment. *See* Dkt. Nos. 90 & 104. The disclosed testimony is as follows:

**Jonathan Havens:** Defendants disclose Havens, a Maryland attorney, as an expert on Maryland cannabis laws and regulations. Ex. 1 at 2. Havens' report offers five opinions, numbered 1-5. *See* Ex. 2. Opinion 1 summarizes provisions in the Code of Maryland Regulations ("COMAR") related to medical cannabis, including provisions that state that the Commission investigates ownership interests in cannabis companies of 5 percent or more and has discretion to deny licenses based on applicants' criminal history, tax history, or moral character. *Id.* at 6. Opinion 2 states that, based on the operating agreements of DOMD and DOMDOP, Josh did not have an ownership interest in DOMD as of November 6, 2015. *Id.* at 7. Opinion 3 is that *if* Josh had an ownership interest in DOMD as of November 6, 2015, failing to disclose that ownership interest to the Commission would violate the letter and spirit of the Commission's disclosure requirements. *Id.* at 8-9. Opinion 4 speculates that the Commission would not have approved DOMD for licensure if one of DOMD's part-owners was under the jurisdiction of a Colorado court in connection with a plea arrangement. *Id.* at 9-10. Opinion 5 is that

failure to disclose Josh's asserted ownership interest as of November 5, 2015 would be grounds for the Commission to deny a license application for lack of candor. *Id.* at 10.

**Jeffrey Pagliuca**: Pagliuca is a Colorado lawyer whom Defendants endorse as "an expert regarding criminal law in Colorado." Ex. 1 at 3. Pagliuca "expect[s] to offer expert opinions regarding: the statutory framework of a deferred judgment in Colorado state courts; the Court order and stipulated agreement that governed [Josh's] deferred judgment; whether, assuming the truth of [Josh's] claim of an oral contract, [Josh] violated the deferred judgment; and whether [Josh] has a valid claim of an ownership interest in Doctors Orders Maryland when viewed in the context of the terms of his deferred judgment." Ex. 3 at 5. Pagliuca then offers the following opinions, labeled Opinions A-D.

Opinion A describes the deferred judgment and deferred sentencing laws in Colorado. *Id.* at 5-6. Opinion B is that the Colorado state court's "order reaches – and prohibits – whatever arrangement plaintiff may claim to have had to supposedly 'retain' an interest which the Court squarely prohibited plaintiff from having." *Id.* at 6. Opinion C is that Josh's actions in divesting from DOMD were "in clear violation of the [Colorado state] Court's order prohibiting him" from owning an interest in a cannabis company. *Id.* at 6-7. Opinion D is that Josh's transfer is akin to a "fraudulent transfer" with the Colorado state court "analogous" to the status of a creditor. *Id.* at 7.

**Brian Flank**: Defendants disclose Flank, a Maryland attorney, as "an expert regarding business planning and transactions in Maryland, including the laws and practices governing and relating to business planning and transactions." Ex. 1 at 5. Flank is a non-retained expert who sat for a deposition as a fact witness in this case. In lieu of

a report, Defendants purported to designate 8 lines of Flank's deposition transcript as containing his expert opinions pursuant to Rule 26(a)(2)(C)(ii), while stating Flank may also offer expert testimony as to other unspecified opinions he gave during his deposition. *Id.* The portions of Flank's fact witness deposition that Defendants designate as expert opinion are reproduced in their entirety below:

> Q. Would you consider yourself an expert in corporate governance issues?
> A.  Yeah.
> ---
> Q: Is it legal for somebody to hold a beneficial interest in property if the purpose of that is to conceal that agreement from a regulatory body?
> A.  I don't believe so.
> Q. Is it legal for somebody to hold a beneficial interest in property if the purpose of which is to defraud a court?
> A. No.

Ex. 4, pp. 76:14-16; 104:15-19.

**<u>Brian Vicente</u>**: Vicente is an attorney licensed in Colorado who, like Flank, was deposed as a fact witness in this case. Ex. 1 at 5. Defendants disclose Vicente as a non-retained "expert regarding the laws and regulations as they apply to the cultivation, production, and distribution of medical cannabis in Maryland specifically including the licensure process, requirements, and expectations to lawfully engage in these activities." *Id.* Defendants disclose Vicente's opinions via page and line citation to his fact witness deposition. Defendants designate approximately four pages of deposition transcript as Vicente's expert disclosure. *Id.* at 6. The disclosed testimony has three components: first, Defendants purport to establish Vicente's credentials as an "expert in medical cannabis regulation." Ex. 5 at 227:3-228:6. Second, Vicente testifies regarding the work he

performed for DOMD during the application and licensure process. *Id.*at 228:7-22. Third,

Defendants offer the following testimony regarding illegality, reproduced in full:

> 5    Q.  Would it have been illegal to conceal
> 6    Josh's ownership if you were, in fact, an owner of
> 7    Doctors Orders Maryland and not tell the Maryland
> 8    cannabis commission?
> 9        A.  Yes.
> 10    Q.  Would it be unethical?
> 11        A.  Yes.
> 12    Q.  Would it be improper?
> 13        A.  Yes.
> 14    Q.  Would it be wrong?
> 15        A.  Yes.
> 16    Q.  Would it be misleading to the commission?
> 17        A.  Yes.
>
> ---
>
> 24    Q.  Would that be legal to, given the Court's
> 25    order and would you have advised him, that he could
>
> Page 236
>
> 1    have somebody hold his interest in Doctors Orders
> 2    Maryland during that time?
> 3        A.  That was a multipart question, but that
> 4    would have been -- I did not say that to him, and it
> 5    would have been illegal to structure that.
> 6    Q.  And it would have been unethical?
> 7        A.  It would have been unethical.
> 8    Q.  Improper?
> 9        A.  Improper.
> 10    Q.  Wrong?
> 11        A.  Correct.

*Id.* at 230:5-17; 235:24-236:11. Defendants also note that Vicente "may also testify as to

any other opinions set forth and testified to in his deposition." Ex. 1 at 7.

## LEGAL STANDARD

Rule 702 permits qualified experts to provide opinion testimony if the evidence is

both relevant and reliable. *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589

(1993). "While an expert may refer to the law in expressing his or her opinion, the expert

may not state legal conclusions drawn by applying the law to facts." *Masters v. Safeco

Ins. Co. of Amer.*, No. 20-cv-0063-PAB-NRN, 2021 WL 4317112, at *3 (D. Colo. Sept. 23,

2021) (citation omitted). Attorney opinions that purport to instruct the factfinder on applicable law are particularly disfavored, as "[t]here is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness." *Specht v. Jensen*, 853 F.2d 805,808 (10th Cir. 1988). This principle applies with equal force whether a trial is to be a bench trial or a trial by jury. *See Wildearth Guardians*, 853 F. Supp. 2d at 1089 (excluding a "complex discussion of what [an expert] considers to be relevant regulations and his interpretation of them" in a bench trial); *Howard v. Ferrellgas Partners, L.P.*, 2014 WL 4639900, at *9 (D. Kan. Sept. 16, 2014) (acknowledging the "basic rules of evidence" prohibit admission of expert testimony on ultimate legal issues in bench trials).

## ARGUMENT

### I.      Each Of Havens' Opinions Is Inadmissible

As a preliminary matter, each of Havens' opinions is inadmissible because the opinions concern whether any agreement at issue in this case is "illegal" or unenforceable as against public policy. This is a legal question for the Court.  "Whether [a contract] is void, voidable, or unenforceable under the law is a matter to be determined by the Court and is *not appropriate witness testimony*." *Pinon Sun Condo. Assoc., Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *4 n.7 (D. Colo. Mar. 25, 2020) (emphasis added); *see also* Dkt. 104 at 11 (noting that unenforceability is a matter for the Court, with the factfinder's role limited to determining the agreement's terms when they are in dispute) (citing *Mulligan v. Smith*, 76 P. 1063, 1066 (Colo. 1904)).

The opinions are independently inadmissible as well. Havens' first opinion merely summarizes three provisions of COMAR related to licensure of cannabis companies in Maryland and states that "[a] principal purpose" of the regulations is to ensure that owners of medical cannabis companies in Maryland meet the requirements of having good moral character." Ex. 2 at 6. This opinion is neither helpful nor relevant. *Wildearth Guardians*, 853 F. Supp. 2d at 1090 ("an expert may not tell the Court what the law is"). To the extent the text of any Maryland regulation governing medical cannabis is relevant, Defendants are free to argue its relevance in legal filings for the Court's determination. *See id*.

Havens' second opinion is a legal determination made by reading the DOMD and DOMDOP operating agreements. The opinion is not helpful, not based on specialized knowledge, and not permissible as expert opinion. *Pinon*, 2020 WL 142166, at *7 ("an expert witness may not testify as to contract interpretation" absent asserted ambiguity).

Havens' second opinion is also irrelevant. "Expert opinions are relevant if they would help the trier of fact to understand the evidence or to determine a fact in issue." *Morris v. DaVita Healthcare Partners, Inc* No. 13-cv-00573-RBJ-KMT, 2015 WL 3413419, at *1 (D. Colo. May 25, 2015). Whether Josh had an ownership interest in DOMD as of November 2015 is not relevant to any claim or defense at issue in this case because Josh asserts no ownership interest at that time. Neither Josh nor Mackie had an ownership interest in DOMD when they entered into the Partnership Agreement in November 2015. The agreement was that, once either of them *did* acquire an interest in DOMD, they would share the interest 50/50. The only agreement Havens' opinion is arguably relevant to is the Temporary Ownership Agreement. But Josh does not seek to enforce that agreement

and thus, as Judge Krieger held, the Temporary Ownership Agreement cannot be the basis for an affirmative defense of unenforceability. *See* Dkt. 104 at 15-16. As a matter of law and common sense, the defenses of illegality and unenforceability apply to the contract to be enforced. *See Bd. of Cty. Comm'rs v. Pfeifer*, 546 P.2d 946, 949 (Colo. 1976) ("A party to an illegal bargain generally can neither recover damages *for breach thereof*, nor … recover performance that he has rendered *thereunder* or *its* value") (emphasis added) (citation and quotation omitted). Even if the Temporary Ownership Agreement were found illegal (which, as Judge Krieger noted, is far from clear), such a finding would not affect the legality of the Partnership Agreement, a simple agreement to share later-acquired equity. *See Reilly v. Korholz*, 32- P.2d 756, 758 (Colo. 1958) (noting that lawful agreements can be severed from unlawful ones, even where "an unlawful promise was made at the same time and for the same consideration").

Havens' third opinion, that if Josh *did* have an ownership interest in DOMD in November 2015, failure to disclose the interest would be unlawful, is inadmissible for the same reason as his first two. Havens' opinion on the lawfulness of the conduct at issue in this case is the precise sort of legal conclusion that the Tenth Circuit rejected in *Specht*. 853 F.2d at 809. And of course, Josh does not claim he had any ownership interest in DOMD as of November 6, 2015, making the opinion irrelevant.

Havens' fourth opinion, that the Commission would not have approved a license for DOMD if Josh was listed as an owner, is speculation not based on any reasoning other than *ipse dixit*. Moreover, both Judge Krieger and Magistrate Judge Wang have already rejected the relevance of such speculation. In denying Defendants' motion to compel that

sought information that Defendants argued would tend to prove Josh would have difficulty obtaining Commission approval, Magistrate Judge Wang wrote: "this action is one to determine the property rights between the named Parties, and not one to prognosticate whether the Commission will ultimately allow the transfer of the license." Dkt. 70- at 7. Judge Krieger agreed and overruled Defendants' objections to Magistrate Judge Wang's order, writing: "the question of whether Maryland might look unfavorably on [DOMD] if the plaintiff secured an ownership stake is not germane to the questions presented in this case – namely, whether Defendant Barch and Trellis previously incurred any obligation to tender ownership interests … to the Plaintiff." Dkt. 104 at 17-18. The opinion is irrelevant for the additional reason that it has no bearing on the Partnership Agreement.

Havens' fifth opinion fails for the same reason as the others. Havens' opinion that Josh somehow displayed a "lack of candor" with the Commission is an impermissible legal conclusion. It is also irrelevant. To the extent Defendants assert Josh "concealed" any sort of ownership agreement, that goes to the enforceability of the Temporary Ownership Agreement which, as discussed above, Josh does not seek to enforce.

As a result, each of Havens' opinions is inadmissible and should be excluded.

II.     **Each of Pagliuca's Opinions Is Inadmissible.**

In his Report, Pagliuca attempts to cast Josh as having somehow defrauded the Colorado state court that entered his deferred judgment. *See* Ex. 3. Pagliuca's Opinion A merely describes the function of deferred judgment and deferred sentencing laws, a subject familiar to the Court and one that Defendants' attorneys can address through legal argument if appropriate.

Opinions B, C, and D each are inadmissible for at least three reasons. First, as discussed, all three opinions go to Defendants' affirmative defenses of unenforceability or illegality, which are legal matters rather than factual ones. Any discussion of Defendants' unenforceability discussion by reference to legal argument is a task for Defendants' attorneys, not expert witnesses. *Pinon*, 2020 WL 1452166, at *4 n.7.

Second, all three opinions are conclusions of law that direct the factfinder's "understanding of the legal standards upon which [its] verdict must be based," the precise category of testimony the Tenth Circuit prohibited in *Specht*. 853 F.2d at 808, 810; *see also Richter*, 796 F.3d at 1195. Opinion B interprets the Colorado state court's June 2015 order, concluding that the order "prohibits" Josh from divesting from his holdings in DOMD while retaining a future right to reclaim those holdings . Ex. 3 at 6. Opinion C is that an agreement to divest from DOMD but retain a right to reclaim an interest after his deferred judgment expired would be a "clear violation of the [state] Court's order.". *Id.* at 6-7. Opinion D draws an analogy between the Temporary Ownership Agreement and a fraudulent transfer, with Josh in the role of debtor and the Court as creditor. *Id.* at 7. Each of these opinions presents an ultimate conclusion of law (namely, that Josh acted unlawfully) and impermissibly seeks to introduce attorney argument as expert testimony. *Specht*, 853 F.2d at 808-810; *Radiologix, Inc. v. Radiology & Nuclear Medicine, LLC*, 2018 WL 1070876, at *8 (D. Kan. Feb. 26, 2018) (holding that expert opinions "asserting that [an] Agreement violates the law[] are improper legal conclusions").

Third, each of Pagliuca's opinions goes to the Temporary Ownership Agreement, not the Partnership Agreement. As discussed above, the opinions are therefore not

relevant to any fact at issue in this case, as no claim or defense is based on the enforceability of the Temporary Ownership Agreement.

### III.   Flank and Vicente Offer Improper Legal Conclusions Inadequately Disclosed

The testimony of Flank and Vicente designated as expert opinion each offers nothing more than legal conclusions that certain ill-defined conduct is "illegal" or "improper" without any analysis whatsoever. *See* Ex. 1 at 4-7 & Exs. 4-5. Both opinions are thus inadmissible for the reasons explained above: they are ultimate conclusions of law, they involve the enforceability of the wrong agreement, and they go to issues that are to be resolved by attorney argument and not witness testimony.

Flank and Vicente's opinions are also inadmissible because Defendants' threadbare disclosures are insufficient under Rule 26(a)(2)(C). Although requirements for non-retained experts are less robust than for retained experts, the disclosure must still "summarize the factual basis" for a non-retained expert's opinions and provide "specifics" supporting those opinions. *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *2 (D. Colo. Sept. 28, 2021); *see also Hayes v. Am. Credit Acceptance, LLC*, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014) (disclosures that merely identify a non-retained expert's opinion but "lack any factual detail" regarding why the expert holds that opinion "fall short" of Rule 26(a)(2)(C)'s requirements). Defendants' threadbare disclosures, which lack any reasoning or methodology behind their bare conclusions of illegality, are not sufficient for the Court to perform its "gatekeeping" function of assessing the "reasoning and methodology" underlying their opinions to determine whether those opinions are reliable. *Ferraro v. Convercent, Inc.*,

14

No. 17-cv-00781-RBJ, 2018 WL 6528111, at *2 (D. Colo. Dec. 12, 2018) (citation and quotation omitted).

Finally, Defendants cannot be permitted to offer any *other* testimony of Flank or Vicente as expert opinions, as they suggest they may. *See* Ex. 1 at 5, 7 (noting that each witness "may also testify as to any other opinions set forth and testified to in his deposition"). A party "cannot satisfy its obligations under Rule 26(a)(2)(C) by merely pointing to large swaths of information, like general references to otherwise unidentified deposition testimony." *Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 WL 1750638, at *3 (D. Colo. Feb. 18, 2021).

For the foregoing reasons, the opinions of Havens, Pagliuca, Flank, and Vicente should be excluded.

April 1, 2022                                    Respectfully Submitted,

Paul H. Schwartz                         *s/ Jonathan A. Helfgott*
SHOEMAKER GHISELLI + SCHWARTZ LLC         Jonathan A. Helfgott
1811 Pearl Street                        LAHTI HELFGOTT LLC
Boulder, CO 80302                        1624 Market Street, Suite 202
(303) 530-3452                           Denver, CO 80202
pschwartz@sgslitigation.com              (303) 376-6160
                                         jhelfgott@lhlitigation.com

*Attorneys for Plaintiff David Joshua Bartch*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2022, I served the foregoing document by filing it via the Court's CM/ECF system, which will serve a copy on all counsel of record.

*s/ Jonathan A. Helfgott*